443 So.2d 632 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Willie HOWARD, Defendant-Appellant.
No. CR83-255.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
Writ Denied January 16, 1984.
*634 Thomas K. Brocato, Small, Small, Williamson & Brocato, Alexandria, for defendant-appellant.
Edwin Ware, Dist. Atty., and Edward E. Roberts, Jr., Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
Defendant, Willie Howard, was charged by grand jury indictment with the offense of second degree murder of Isaac Kenebrew, a violation of LSA-R.S. 14:30.1. The defendant was tried twice. The first jury trial ended in a mistrial because the jury was unable to reach a verdict. The second trial resulted in a finding of guilty of the lesser offense of manslaughter, a violation of LSA-R.S. 14:31, by a ten to two vote. The defendant was sentenced on January 20, 1983, to ten years at hard labor. Defendant appeals his conviction making five assignments of error. Assignments of error numbered 2, 3 and 5 have not been briefed nor argued and are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
In the afternoon and early evening of February 5, 1982, the defendant, Willie Howard, was present at the residence of the victim, Isaac Kenebrew. There were others present, including Isaac Kenebrew, Robert Anthony and the victim's "common-law wife", Brenda. There was a considerable amount of drinking going on and at one point the victim forcibly ejected Willie Howard from the Kenebrew home. Immediately thereafter two shots were fired, and Mr. Kenebrew fell to the floor. There were no signs that Mr. Kenebrew, who was extremely inebriated, had been shot and, at his request, Robert Anthony carried him to bed. A few hours later, he was found dead. The police were called to investigate the fact that there was a shooting at the residence, but they could find no obvious bullet holes in the victim. The body was taken to Shreveport for an autopsy, on February 8, 1982. Thereafter, the coroner informed the Alexandria City Police that Isaac Kenebrew had in fact died of a bullet wound.
An investigation was begun in the homicide. Witnesses were questioned and Willie Howard was determined to be the primary suspect. On February 9, 1982, at 12:32 p.m., the defendant appeared at the Alexandria police station and contacted a Lt. Ritchie in the detective division because he understood the police had been looking for him. Lt. Ritchie informed Howard that they were not looking for him, that they knew where he was and that they had merely been questioning people in his neighborhood concerning him. The defendant then advised the officer that he wanted to talk. Lt. Ritchie responded that since the defendant was a suspect, he must advise him of his Miranda rights. After he was advised of his rights, the defendant stated that he didn't want to say anything without his attorney present. Lt. Ritchie responded that he could not talk to the defendant unless he waived his right to an attorney. The defendant then inquired whether he was under arrest. When Lt. Ritchie responded "No," and informed Mr. Howard that he could leave, the defendant left the station.
Within a couple of hours, Lt. Ritchie and Officer Kitchens went to the defendant's residence, his mother's home, to search for a pistol. The defendant, his mother and a Mr. Cotton were present. While Lt. Ritchie was explaining to Mr. Howard's mother that they wished to search for a pistol, the defendant blurted out that he had already informed the officers that he had thrown the pistol away on Saturday morning. His mother refused to allow the officers to search the house and they immediately left.
An arrest warrant was obtained and the defendant was arrested at his home at 4:12 p.m. on February 10, 1982. He was brought to the police station at 4:24 p.m. and read his rights. At 4:30 p.m. after *635 signing an express waiver of rights, the defendant responded to questioning and gave an inculpatory statement.
The defendant's remaining assignments of error are as follows: (1) the trial judge erred in denying defendant's motion to suppress and in allowing the inculpatory statement to be introduced into evidence at his trial; and, (2) the jury erred in convicting the defendant where the prosecution failed to prove every element of the crime beyond a reasonable doubt.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant claims that the trial court erred in denying defendant's motion to suppress the inculpatory statement, and in allowing said statement to be introduced into evidence at his trial. He contends that under all circumstances, he was not afforded his right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution, and Article 1, Section 13 of the Louisiana Constitution of 1974, nor was his right to remain silent and his right to counsel honored as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article 1, Section 13 of the Louisiana Constitution of 1974.
We first note that defendant's contention that his Sixth and Fourteenth Amendments' right to counsel was violated has no merit. That right prohibits law enforcement officers from "deliberately eliciting" incriminating information from a defendant in the absence of counsel after a formal charge against the defendant has been filed. In this case there was no formal charge or indictment and the Sixth and Fourteenth Amendments' right to counsel had not accrued. Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). See also Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
We now turn to the question of whether the use of Howard's confession against him at his trial violated his rights under the Fifth and Fourteenth Amendments as construed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and its progeny.
Defendant's principal contention is that the facts of this case establish a violation of the "new rule" enunciated in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1980). In Edwards, the defendant had been arrested on criminal charges and was subjected to custodial interrogation until he asked for an attorney. Questioning then ceased and the defendant was taken to jail and locked up. The next day, two detective colleagues of the officers who had interrogated the defendant the previous night, came to the jail and asked to see the defendant. The defendant told the guard that he didn't want to talk to anyone. The guard responded that he had to talk to the detectives. The defendant met with the detectives who stated that they wanted to talk to him and informed him of his Miranda rights. After listening to a portion of a taped statement of an alleged accomplice, the defendant implicated himself in the crime. The U.S. Supreme Court stated its holding as follows:
"... we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.8 We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." (Emphasis added and footnotes omitted)
The facts which distinguish this case from Edwards are that although Howard had been advised that he was a suspect and informed of his Miranda rights, when he initially requested the presence of counsel, he was not in custody and not interrogated. *636 Rather, he had voluntarily appeared at the police station and upon his refusal to speak to the officers without the presence of counsel was allowed to leave. He was not taken into police custody until 28 hours later at which time he was first subjected to custodial interrogation after having been read his rights.
The defendant contends that this distinction does not make the rule of Edwards inapplicable. He argues that although he was not in custody, he was the focus of the investigation at the time that he invoked his right to counsel and therefore no interrogation of the accused should have taken place unless he himself initiated it.
A resolution of this issue requires an examination of the rationale behind the Edwards' rule. After announcing that "it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel", the court, in Edwards, further explained as follows:
"... The Fifth Amendment right identified in Miranda is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver. Rhode Island v. Innis, supra, makes this sufficiently clear. 446 U.S., at 298, n. 2, 100 S.Ct., at 1688, n. 2.9"
In Rhode Island v. Innis, supra, the court elucidated as follows on the policies underlying Miranda:
"... The concern of the Court in Miranda was that the `interrogation environment' created by the interplay of interrogation and custody would `subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination. Id. [384 U.S.] at 457-458, 86 S.Ct., at 1619."
In this case, the February 9th conversation was not custodial interrogation and therefore the February 10th interrogation was not further interrogation or reinterrogation. Unlike Edwards, who was incarcerated and had his movements, associations and communications controlled by police officials, Howard was free to go as he pleased for a period of 28 hours between the invocation of his right to counsel and the initial custodial interrogation. Edwards decided after arrest not to talk to the officers. He had no chance between his arrest and subsequent statements to contact or talk to an attorney. Although he twice expressed his reluctance, the police persisted until he implicated himself. Cf. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).
In Oregon v. Bradshaw, ___ U.S. ___, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Supreme Court explained the reason behind the Edwards rule as follows:
"... This was in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in Edwards was ..."
We think that the prophylactic per se rule of Edwards was designed to protect an accused in custody from persistent badgering. That is, a valid waiver of his right to counsel cannot be established where an accused in custody is persistently reinterrogated until he impliedly or expressly waives his rights. We therefore conclude that here, where the first and only interrogation was on February 10th, the validity of the waiver of counsel is not controlled by the per se rule of Edwards. Edwards v. Arizona, supra, N. 10.
Since there was no violation of the Edwards rule in this case, the next inquiry is "whether a valid waiver of the right to counsel and the right to silence has occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances". Edwards v. Arizona, supra. See also Wyrick v. Fields, ___ U.S. ___, 103 S.Ct. 394, 74 L.Ed. 214 (1982) (per curiam). This determination depends "upon the particular facts and circumstances *637 surrounding the case, including the background, experience, and conduct of the accused". North Carolina v. Butler, 441 U.S. 369, 374-375, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). See also Oregon v. Bradshaw, supra. The trial court made this inquiry and concluded there was a valid waiver relying on express written and oral statements of waiver by the defendant.
"An express written or oral statement of waiver of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver."
North Carolina v. Butler, 441 U.S. 369, 374-375, 99 S.Ct. 1755, at 1757, 60 L.Ed.2d 286.
Willie Howard has a ninth grade education. On February 10, 1982, at 4:24 p.m., after indicating that he understood his rights, Howard signed a printed waiver of rights form which was read to him by Officer Kitchens. The form recites that he read a statement of his rights which he understood, that he was willing to make a statement and answer questions, that he did not at that time want a lawyer present, that no promises or threats had been made to him and that no pressure or coercion had been used against him. After signing a form indicating that he did not wish to call anyone, he made an oral statement to Officer Kitchens and Lt. Ritchie at 4:30 p.m. The statement which was recorded begins with an acknowledgement by defendant whereby he again indicated that he had been advised of his rights, and that his signature appeared on the waiver of rights form in order to waive those rights and give the statement.
Lt. Ritchie and Officer Kitchens both testified that the defendant had been in custody for less than 20 minutes. He did not appear to be under the influence of drugs or alcohol and seemed alert. He was made comfortable and not denied anything at any time. No threats, promises or inducements to talk were made to him and the defendant indicated that he understood his rights. This testimony is unrebutted.
There is no evidence in the record of any circumstances which would indicate that the express waiver was not knowing and intelligent. We therefore conclude that the trial judge properly found that the prosecution had sustained its burden of showing that the waiver was knowing and intelligent. There is no merit to this assignment of error. The trial judge correctly refused to suppress defendant's inculpatory statement.

ASSIGNMENT OF ERROR NO. 2
In this alleged error, defendant contends that the State's evidence was insufficient to sustain the conviction of the defendant on a responsive verdict of manslaughter to the charged crime of second degree murder. Specifically, defendant argues that the State failed to rule out accident, negligence or self-defense in its evidence.
"The due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."
In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
The State therefore bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self defense; State v. Brown, 414 So.2d 726 (La.1982); and that the defendant had specific intent to kill or do great bodily harm. State v. Huizar, 414 So.2d 741 (La.1982).
The relevant inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see also, State v. Mathews, 375 So.2d 1165 (La.1979) and State v. Brown, supra.
*638 With regard to the issue of self defense, defendant contends that the State failed to rebut by competent evidence his statement that he fired the gun over the victim's head in order to scare him back because he was afraid that the victim would do defendant harm.
R.S. 14:20 reads in pertinent part as follows:
"A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger;"
We are here concerned with whether the defendant could have reasonably believed he was in danger of losing his life and whether he could have saved himself from danger without resorting to deadly force.
The defendant's statement that he shot at defendant because he was afraid that the victim would do him harm and the corroborated fact that the victim had physically ejected the defendant from his residence is the only evidence in the record which would support a finding of self defense. The other evidence tends to negate such a finding. The remainder of defendant's statement recites the following facts: that for no reason apparent to the defendant, Kenebrew struck him with his fist; that defendant continued walking toward the sidewalk; that when he turned and saw Kenebrew walking toward him, he pulled his pistol and shot twice over his head. The defendant further stated that Kenebrew had not threatened him nor had he seen a weapon in the possession of the victim and that since he was already outside he could have kept on walking but didn't because he just wasn't thinking.
Although there is no unqualified duty to retreat, the possibility of escape is a recognized factor in determining whether or not a defendant had the reasonable belief that deadly force was necessary to avoid the danger. State v. Collins, 306 So.2d 662 (La.1975).
Without considering the remainder of the State's evidence which only supports the necessary inferences to negate a finding of justifiable homicide, but considering alone the defendant's statement in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that the homicide was not justifiable, i.e., either that (1) the defendant could not reasonably have believed he was in danger of losing his life or receiving great bodily harm; or (2) he could have saved himself from the danger without resorting to deadly force.
With regard to the issue of specific intent the defendant contends that although the court concluded that the victim's death was the result of the shots fired by the defendant, the State nevertheless failed to prove beyond a reasonable doubt that the defendant had the requisite intent.
"Although intent is a question of fact, it need not be proven as a fact, instead, it may be inferred from circumstances or transactions."
LSA-R.S. 15:445; State v. Fuller, 414 So.2d 306 (La.1982); State v. McDermitt, 406 So.2d 195 (La.1981); In Interest of Franklin, 399 So.2d 671 (La.App.1981).
The defendant claims that he fired the shots over the victim's head, and explains the shooting as a result of a ricochet and thus accident or negligent and unintentional.
The State presented evidence through the testimony of Dr. George McCormick, the coroner, and Officer Ray Delcomyn, the crime scene investigator in this case, that the aim of the defendant was in line with the victim. Dr. McCormick opined that the bullet found in the victim had not ricocheted off of anything before entering the victim's body. Officer Delcomyn established that the other bullet fired from the defendant's weapon struck a wall in the victim's residence at a height of four to four and one-half feet from the floor.
The jury apparently chose not to believe defendant's testimony that he fired *639 over the head of the victim, relying instead on competent conflicting evidence introduced by the State. This evidence, viewed in the light most favorable to the prosecution, was clearly sufficient to convince a reasonable juror beyond a reasonable doubt that defendant specifically intended to kill or inflict great bodily harm.
We therefore conclude that the prosecution has sustained the burden of proving beyond a reasonable doubt the facts necessary to convict the defendant of manslaughter. There is no merit to the second assignment of error.
Accordingly, we affirm the sentence and conviction of defendant, Willie Howard.
AFFIRMED.
DOMENGEAUX, C.J., concurs. See my concurring opinion in State v. Gatson, 434 So.2d 1315 (La.App.1983).