DOMENGEAUX, Judge.
Defendant Patsy Huddleston was convicted of manslaughter, a violation of La. R.S. 14:31, and was sentenced to seven years imprisonment at hard labor without the benefit of parole, probation, suspension of sentence and, for two years, without the benefit of credit for good time. The defendant originally appealed her conviction, alleging six assignments of error. However, because the defendant failed to file an appeal brief, her assignments of error were considered abandoned by this Court. Therefore, the appeal was subject only to a review for errors patent on the face of the record. See, State v. Patsy Huddleston, 477 So.2d 1311 (La.App. 3rd Cir.1985). On June 4,1986, pursuant to an application for writs filed by the defendant’s new counsel, on the grounds that the defendant lacked effective assistance of counsel on original appeal, this Court granted the defendant a new appeal. The defendant now reasserts her six original assignments of error.
FACTS
At approximately nine o’clock on the morning of July 21, 1983, the police were summoned to defendant’s residence to investigate the shooting death of defendant’s husband, Frank Huddleston. At the scene, the defendant was emotionally upset, but told the officers that she and her husband had been fighting, and that she had shot him because he had been beating her.
In statements made to the police, both at the scene and at the police station, the defendant described how a struggle had ensued between herself and the victim in the hallway of their home. The victim was armed with a gun which discharged during the struggle and fell to the floor. When defendant grabbed the gun, the victim grabbed the defendant and began to choke her. At that point, the defendant shot and killed the victim.
*904 Defendant told the officers that she had not put a robe on over her torn nightgown by the time they arrived so that they could see that the victim had beaten her and had torn her gown. Officers Eva Vercher and Ronald Lewis testified that they did not see any marks, bruises or abrasions on the defendant’s body. The officers also stated that they did not see any signs of a struggle at the scene of the shooting.
Dr. Lehrue Stevens, a forensic pathologist, performed the autopsy on the victim. He testified that, considering the bullet’s entry and exit wounds on the victim, it was his opinion that the victim had been shot in the head from behind. There was also a grazed wound on the victim’s forehead which was consistent with having been grazed by a gunshot. It was impossible, however, to determine from the evidence the exact cause of the wound. The doctor stated that he believed the victim had been shot from a distance of five to six feet.
The only possible eyewitness to the crime was the defendant’s elderly father who was staying with her. However, he appeared confused and disoriented on the morning of the shooting and neither the state nor the defense chose to call him to testify.
At the police station, the defendant stated that the argument occurred because her husband had accused her of seeing someone else and she accused him of having someone else in their home while she was away in California.
At trial, defendant testified that the victim returned home during the early morning hours of July 21, 1983, brandishing a gun and threatening to kill her if she did not perform oral sex with him. On the witness stand, she described how she tripped him in their dining room with a telephone cord and how the victim fell to the floor and dropped the gun. She further testified that they both scrambled for the gun, but that she was able to reach it first and that she tried to outrun her husband to the front door. She then testified that she feared he might have gotten another gun from the bedroom before he blocked her exit in the hallway. She said the victim told her, “you better shoot me because I’m going to get that gun, ... and I’m going to shoot you, because I’m going to kill you tonight.” She stated that she retreated down the hallway as the victim approached her, until finally she was forced to shoot him. She did not remember, however, exactly how many times she may have shot the victim.
ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in sustaining a hearsay objection concerning the testimony of two witnesses, Ella Mae Rankins and Goldie Gasaway. Defendant argues in her brief that their testimony was admissible as an exception to the hearsay rule because they would corroborate a prior witness’s testimony regarding defendant’s reasonable belief of actual danger. The defendant claims that the testimony of both witnesses corroborates the defendant’s testimony that she had a reasonable belief that the victim presented danger to her.
“Hearsay” is in-court testimony or written evidence of a statement made out of court, offered as an assertion to show the truth of the matter asserted therein and resting for its value upon the credibility of the out-of-court asserter. State v. Martin, 458 So.2d 454 (La.1984). Except as provided by the Code of Criminal Procedure, hearsay evidence is inadmissible. La. R.S. 15:434. Hearsay evidence, even when introduced to corroborate a pri- or witness’s testimony, is still hearsay and remains inadmissable. See, State v. Spell, 399 So.2d 551 (La.1981); State v. Johnson, 389 So.2d 1302 (La.1980); State v. Arnold, 367 So.2d 324 (La.1979). Therefore, the trial judge's ruling that the hearsay testimony was inadmissible was correct.
Even if there was such an exception to the general rule permitting the introduction of corroborating testimony, the statements in questions were not corroborating testimony. Initially, it must be noted that the defense called Ms. Rankins as their first witness. Thus, she was in no position to corroborate anyone’s testimony, particularly that of the defendant who, of course, had not yet testified.
*905 Ms. Gasaway testified that the victim had been over to see her one week prior to the date of the homicide. At this visit, the victim told Ms. Gasaway that he was going to teach his wife to have oral sex because “he was tired of going out on the street ... [because] his back be hurting and he don’t feel like getting up early when he got a wife in the house.” While the desires of the victim may not have appealed to his wife, the victim’s statements do not appear to imply that he meant to harm defendant. Therefore, Ms. Gasaway’s testimony would not have corroborated the defendant’s claim of self defense or that the victim posed a danger to the defendant.
Ms. Rankins testified that the defendant called her at 3:00 a.m. and 5:00 a.m. on the morning of the homicide. At 3:00 a.m. defendant stated that, although she and the victim had been arguing, they planned to make their marriage work. At 5:00 a.m., and now distraught, defendant called Ms. Rankins again and the victim could be heard fussing and cursing in the background. Defendant asked Ms. Ran-kins to come over because this was the only way the victim would leave defendant alone. Ms. Rankins agreed but, then fell asleep. While this testimony may add credibility to defendant’s testimony that she and her husband were fighting, it did not indicate that she felt her life was in danger. Therefore, the testimony also failed to corroborate defendant’s claim of self-defense.
For the forgoing reasons, this assignment has no merit.
ASSIGNMENT OF ERRORS NO. 2 AND 4
In these assignments of error, the defendant contends that the trial court erred in not granting her motion for a post verdict judgment of acquittal and in denying her motion for a new trial based on the verdict being contrary to law and the evidence. In both motions, the defendant alleges that the state failed to prove beyond a reasonable doubt that the defendant had the specific intent to kill or inflict great bodily harm to the victim and that the state failed to prove beyond a reasonable doubt that the homicide was not committed in self-defense.
To reverse the trial court based upon insufficiency of evidence, the issue is whether a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could find that the essential elements of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)[1]. In this appeal, defendant claims that her actions were taken in self-defense. When a defendant claims self-defense, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Savoy, 418 So.2d 547 (La.1982).
La. R.S. 14:20 provides that a homicide is justifiable,
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger;
Hence, the initial issue is whether a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could not have concluded that the state carried its burden of proving that the defendant did not reasonably believe that she was in imminent danger of losing her life or receiving great bodily harm and that her actions were not necessary to save herself from that danger.
At trial, testimony was adduced by the defense of prior altercations between the defendant and her husband. There was some evidence that the victim had previous *906 ly injured the defendant. In two prior incidents, the defendant had received black eyes. Most of their arguments, however, were verbal, with the defendant leaving the home and not returning until her husband either left or cooled off.
Subsequent to a previous fight, the defendant went to the police station where Officer Joan Sensat Collins photographed her bruises. These photographs were lost and were unavailable at trial.
The defendant returned from a trip out of town on the Saturday before the fatal shooting of her husband on the following Thursday. She testified that they began arguing on Monday and continued arguing off and on until Thursday morning. On the stand she related the following events. They were arguing around one o’clock Thursday morning when the victim suddenly left with someone who had knocked on their door. She said a “death fear” came over her and she called her sister and her mother. Sometime later the victim returned home with a half-pint of gin and a gun in his belt. He “popped” her on the back of the head. Insisting that she drink the gin, he held a gun on her for approximately two hours, during which time he screamed, yelled and cursed at her. She said that he was threatening to kill her if she did not perform oral sex with him, that he told her he was tired of her, and that he could have all the women he wanted. She explained that there was no way for her to escape him as she had done during past arguments. After about two hours, the victim left the kitchen to change into his pajamas. When he returned towards the kitchen, the defendant pulled the telephone cord accross his path, causing him to trip and fall in the dining room. As he tripped, he dropped the gun. Both of them scrambled for the gun and a scuffle occurred in the dining room. At some point during this melee, the victim grabbed the defendant with such force that the defendant believed that he was going to choke her to death. After getting the gun, the defendant stated that she ran back through the kitchen and through the hallway in an attempt to reach the front door. The victim, having gone through the bedroom, cut her off in the hall. She told the jury that her husband told her that she had better shoot him, because he was going to take the gun away from her and kill her. He kept coming forward and she kept backing up until, finally, she closed her eyes and shot him. She did not remember how many times she shot him. She testified that he had come after her like a wild man and that they had never had any arguments as bad as this one.
On cross-examination, the defendant stated that when she told the police her husband had been beating her she was referring to the pop or hit on the head she received from him when he arrived home around 5:00 a.m. She also stated that the police had come to their home around seven or eight times because of their marital disturbances. On rebuttal, however, state’s witness Karl Guillard, testified that in the past five years there were only three complaint cards for the defendant’s residence. One was for a disturbance, and the remaining two complaints concerned burglaries and thefts.
At trial, Officer Ronald Lewis testified that the defendant told him a slightly different version on the morning of the shooting. Although she was visbly upset over the shooting, the defendant told the police that the fight had been caused by her husband who had accused her of seeing someone else. She also stated that she had accused him of having someone else in their home while she was in California. She told the police that he had beat her and that he had a gun. She said that they struggled over the gun in the hallway of their home, and that the gun went off. At some point the gun fell to the floor and she grabbed a hold of it. Her husband grabbed her and began choking her, tearing her nightgown in the process. It was at this time that she shot him.
The police found no signs of a struggle in the home, nor did they observe any physical marks, abrasions or bruises on the defendant’s body. The gun was not analyzed for fingerprints because it had been mishandled at the scene.
*907 Dr. Stevens testified that the victim was shot in the back of the head from a distance of five to six feet. A graze wound was on the victim’s forehead, but the doctor could not tell either what had caused the wound or from which direction it had been caused. He speculated that the victim could have been grazed by a bullet on the forehead and then turned to run and he was shot in the back of the head.
In light of the conflicting versions of where the struggle between the victim and the defendant actually occured, (i.e., in the hallway or in the dining room) and of the reasons given for the argument, the question becomes an issue of just which witnesses the jury chose to believe.
When there is conflicting testimony as to a factual matter, the question of the credibility of the witnesses is within the sound discretion of the trier of fact. The jury’s factual determinations are entitled to great weight and should not be disturbed unless clearly contrary to the evidence. State v. Klar, 400 So.2d 610 (La.1981). The jury’s determination in this matter, that the defendant did not act in self-defense, is not clearly contrary to the evidence. Therefore, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have concluded that the state carried its burden of proving that the defendant did not act in self-defense.
Defendant also argues that the state did not prove beyond a reasonable doubt that the defendant had the specific intent to kill or inflict great bodily harm, an element of the responsive verdict of manslaughter. Although intent is a question of fact, it need not be proven as a fact, instead it may be inferred from the circumstances of the transaction. La. R.S. 15:445; State v. Howard, 443 So.2d 632 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 1215 (La.1984).
As stated before, the defendant testified that she shot her husband after several hours of being subjected to death threats. According to the defendant, the victim had blocked her only avenue of escape and as he approached her, he stated that she had better shoot him because he was going to kill her.
The jury apparently chose to believe that when she shot the victim she had the specific intent to kill him. They, at the very least, believed that she had the specific intent to inflict great bodily harm. Thus, it can be said that in viewing the evidence in the light most favorable to the prosecution, the evidence is clearly sufficient to convince a reasonable juror, beyond a reasonable doubt, that defendant specifically intended to kill or inflict great bodily harm. Therefore, it can be concluded that the state sustained its burden of proving the facts necessary to convict the defendant of manslaughter.
These assignments of error lack merit.
ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial court erred in denying her motion for a new trial. Defendant based her motion on the newly discovered evidence of a bullet found lodged in the wall of her dining room. Defendant contends that the location of the bullet corroborates her testimony that she acted in self-defense and, thus, this bullet amounts to newly discovered evidence warranting a new trial.
La. C.Cr.P. art. 851 provides, in pertinent part,
The court on motion of the defendant, shall grant a new trial whenever: ... (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
Therefore, defendant must show that the bullet was not discoverable through reasonable diligence before or during the trial and that the introduction of this bullet would have changed the verdict.
In this case, defendant continued to occupy the house for five months after her husband’s death. It is difficult to conclude *908 that defendant could not, through reasonably diligent efforts, have discovered this bullet lodged in a wall within the five months that elapsed between the date of the crime and her trial. This is particularly incredible when one considers the seriousness of the charge pending against the defendant, second degree murder, and the fact that defendant knew that only two of three bullets had been found and, therefore, knew to search for another. Addionally, defendant presumably knew in what areas to look for the bullets since she testified as to where the shots were fired. Hence, it does not appear the defendant has shown that this evidence was nondis-coverable under due diligence prior to trial.
In addition, there has been no proof showing that this bullet found several months later was even involved with the homicide in question. The bullet was still being analyzed by the Acadiana Crime Laboratory as of the date of the hearing on the motion for a new trial. Hence, defendant has not presented sufficient proof that the bullet is relevant to defendant’s trial.
However, even if the bullet was proven to be from the same gun involved in the crime, the fact that the bullet was found lodged in a wall in the dining room is unlikely to have changed the verdict. The state never denied that three bullets were fired since three empty casings were found. Nor did the state ever deny the fact that the unaccounted for bullet could be found somewhere in the house. The location of the third bullet does not negate defendant’s testimony that she shot the victim and that the fatal bullet entered the back of the victim’s head, thus, negating her self-defense theory.
For these reasons the trial court properly denied defendant’s motion for a new trial. This assignment lacks merit.
ASSIGNMENT OF ERRORS NO. 5 AND 6
Defendant contends the trial court unconstitutionally applied La. C.Cr.P. Art. 893.1 and La. R.S. 14:95.2 to defendant’s sentence, thus rendering it invalid, or in the alternative, excessive, and in violation of La. Const. Art. I § 20. Pursuant to article 893.1, defendant was sentenced to serve five (5) years at hard labor and in accordance with R.S. 14:95.2, defendant was sentenced to serve two (2) years, both without benefit of probation, parole, or suspension of sentence.
La. C.Cr.P. Art. 893.1 requires that,
When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) Five years, in the same manner as provided in the offense if the maximum sentence is five years or more.
Impositsion or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole.
Thus, the sentencing judge is required to impose a minimum sentence when a felony has been committed with the use of a firearm.
La. R.S. 14:95.2 provides, in pertinent part,
A. Notwithstanding any other provisions of law to the contrary, any person who uses a firearm or explosive device at the time he commits or attempts to commit the crime of ... manslaughter ... shall upon conviction serve a term of two years imprisonment for the first conviction and upon conviction for each second and subsequent offense listed in this Section, he shall serve a term of five years imprisonment.
B. The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title and such person shall serve the additional term of imprisonment in the same manner as provided in the offense for which he was convicted and without benefit of parole, probation, suspension of sentence or credit for good time and any adjudication of guilt or imposition of *909 sentence shall not be suspended. (Emphasis added).
Therefore, this second statute provides for the enhancement of a sentence when a defendant is convicted of using a firearm during the commission of certain enumerated crimes. Defendant contends under the authority of State v. Jackson, 480 So.2d 263 (La.1985), that these statutes were unconstitutionally applied in sentencing her.
In Jackson, supra, the Louisiana Supreme Court discussed the two sentencing statutes at length and held that a defendant could not be sentenced under R.S. 14:95.2 unless he had been so charged by indictment or bill of information. This rule was to be applied both prospectively, and to those cases still subject to direct review, that is, cases which have not yet become final upon first appellate review. The Jackson court also held that a defendant could not be sentenced under C.Cr.P. Art. 893.1 unless the procecutor provided the defendant with written notice in advance of trial that the state intended to involve the statute. Originally, this second portion was to be applied only prospectively from the date Jackson was rendered, December 2, 1985. However, in State v. Allen, 496 So.2d 301 (La.1986), the Court held that this second rule was to be given limited retroactivity, applicable to those cases still subject to review on direct appeal, similar to the requirement regarding R.S. 14:95.2. Therefore, cases on direct appeal and those thereafter, as of December 2, 1986, are subject to the holding of Jackson and Allen.
In this case, there is no notice to the defendant in the record of the state’s intention to use Article 893.1 to enhance defendant’s sentence, nor does the indictment charge defendant with violating La. R.S. 14:95.2. Therefore, since this case is on direct appeal and since the record does not show compliance with the holding in Jackson, the sentencing judge erred in applying the two statutes. The sentence, therefore, must be vacated and this case remanded to the district court for resentencing.
Defendant argued, in the alternative, that her sentence was unconstitutionally excessive[2]. Having concluded that this case must be remanded for resentencing, this issue need not be addressed.
For the above and foregoing reasons the conviction of Patsy Huddleston for manslaughter, La. R.S. 14:31, is affirmed. The sentence is vacated and the case is remanded to the district court for resentencing in accordance with the decision of this court.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See my concurring and dissenting opinions in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983): State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983); and State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 128 (La. 1984).

. The author of this opinion is compelled to again state his position as to appellate review of sentences for exccssiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See, State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983). concurring opinion at 533; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir.1983), concurring opinion at 1339, writ denied, 433 So.2d 729 (La.1983); State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), concurring opinion at 1169; State v. Rainwater, 457 So.2d 1280 (La.App. 3rd Cir. 1984), concurring opinion at 1282.