529 So.2d 1347 (1988)
STATE of Louisiana
v.
Edna GIBSON.
No. 88-KA-141.
Court of Appeal of Louisiana, Fifth Circuit.
July 26, 1988.
*1348 Bruce G. Whittaker, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant/appellant.
Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for the State.
Before BOWES, DUFRESNE and GOTHARD, JJ.
BOWES, Judge.
The defendant, Edna Gibson, was charged with violation of LSA-R.S. 14:30.1 Second Degree Murder in the stabbing death of her husband, Louis Gibson. A jury trial was held, at which the defendant was convicted as charged by a margin of ten jurors to two jurors. The defendant received the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appeals her conviction. We affirm.
The facts of this case are as follows. The bartender, Permilla Robertson, testified that in the early morning hours of September 5, 1986, Louis and Edna Gibson arrived at the Four Sisters' Lounge in Kenner, Louisiana, where she was working. The defendant walked in first and was seated on a bar stool. The victim walked in a few minutes later and sat on a bar stool near the defendant and both of them ordered a drink. Robertson stated that although the couple did talk to one another, it did not appear they were involved in any type of argument.
The defendant left the bar and returned approximately thirty minutes later, having changed her clothing from a pair of jeans to a green skirt. Upon her return, she and her husband spoke a few words that resulted in the defendant pulling a knife and shoving it towards her husband, who then pushed her away. At that point, Robertson told the couple that they would have to leave because she did not allow that type of behavior in her bar. The defendant and her husband then walked outside.
Robertson served another customer and decided to check on the couple she had just evicted. Just as she looked out of the peephole in the front door, she saw the defendant stab the victim, who fell to the ground. The defendant then walked away from the scene and Robertson phoned the police. The victim was taken to Charity Hospital where he later died of the wound inflicted by his wife.
Officer Smith was called to the scene of the stabbing where he obtained a description of the defendant and, with another officer, began to look for her. He and Officer Lacher, in separate units, found the defendant on Third Street. Officer Smith stopped and spoke with her, at which time she identified herself, stated that she had *1349 been at the lounge, and admitted that she had stabbed the victim, but claimed she had done so in self-defense. Officer Smith saw no bruises, injuries or torn clothing on the defendant, but she appeared to have been drinking and had the smell of alcohol on her breath. However, she was lucid and did not appear drunk.
Officer Lacher found the knife a half block from the scene of the stabbing.
The defendant was not arrested at that time, but was released and allowed to return to her home. She was arrested later that same morning after the police learned that Mr. Gibson had died as a result of the stab wound.
At trial, Dr. Gerald Liuzzo was stipulated as an expert in forensic pathology. He performed the autopsy on Louis Gibson and testified that the cause of death was a single stab wound which entered the heart. Also discovered were two other wounds, one noted by Dr. Liuzzo and one not noted by him, both of which were on the victim's hands and were photographed. They may or may not have been defense wounds. The toxicology report showed that the victim's blood alcohol level was .21 at the time of death. The emergency room report noted that the victim was conscious and combative when he arrived at the hospital.
The defendant, testifying in her own behalf, stated that on the night in question, the victim had been drinking since 7:00 p.m. At midnight, they had a fight in which she yelled and he punched her. The couple made up and "talked nice" to one another and went home. Because she was afraid of her husband, she put a knife in her bra. They then went to the Four Sisters Lounge. She later left the bar alone, went home and changed her clothes, and returned to the bar. She asked the victim if he was ready to go home, and, when he said "no", they started arguing and Robertson asked them to leave. After they walked out of the bar, she claims the victim hit her. She said when he tried to hit her again, she took the knife out and swung at him. The defendant also stated that she did not realize that she had actually stabbed the victimwhen he fell, she thought he was playing a trick on her.
The defendant further testified that she and the victim had been involved in a relationship for ten years and were married for the last three years. Their relationship was stormy and included many fights, some of which were physical. Usually, both had been drinking alcohol when the fights occurred. The defendant also testified that she had armed herself on the night of the stabbing because she and the victim were involved in a fight earlier in the day in which she had to hit the victim with a lamp to keep him from choking her.
The defendant presents two assignments of error:
1. The verdict is contrary to the law and the evidence in that the State failed to prove beyond a reasonable doubt that Appellant did not act in self-defense.
2. The evidence at trial viewed in the light most favorable to the State supports at most a conviction for manslaughter.
Assignment of Error No. 1
Defendant asserts that the State failed to carry its burden of proof that she did not act in self-defense.
Louisiana jurisprudence has long held that a defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue; instead, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986); State v. Necaise, 466 So.2d 660 (La.App. 5 Cir.1985).
The relevant inquiry on appeal is whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Garcia, supra; State v. Williams, 483 So.2d 999 (La.1986).
*1350 To determine when a homicide is justified, we are guided by LSA-R.S. 14:20, which provides in pertinent part:
A homicide is justifiable
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
This court has previously held in State v. Dill, 461 So.2d 1130 (La.App. 5 Cir.1984) writ denied 475 So.2d 1106 (La.1985) that the adjudication of the defendant's culpability by the trier of fact focuses on a two-fold inquiry:
1) From the facts presented, could the defendant reasonably have believed his life to be in imminent danger and
2) Was deadly force necessary to prevent the danger.
In the present case, we recall, pertinently, that the defendant testified in her own defense as follows: that she and the victim had been drinking since 7:00 p.m. and that, prior to their arrival at Ms. Robertson's bar, they had been involved in an argument in which the victim "punched" her; that she armed herself because of her fear of her husband; that the couple went to Robertson's bar where the defendant again left for a half hour to change her clothes and then returned to the Four Sisters Lounge; that, after she returned, she and the victim started arguing again; that after Ms. Robertson evicted the couple for arguing in the bar, that she and the victim began arguing again outside and the victim hit her; that when he started to hit her again, she swung at him but did not realize that she had made contact.
The defendant also testified that she and her husband fought much of the time and that he physically beat her on many occasions, including the night of the fatal stabbing.
As we observed in the recitation of facts above, Ms. Robertson contradicted the defendant's testimony regarding what happened while the couple were inside the lounge. She testified that she did not hear the couple arguing and said the victim "just sat there." She also stated that the defendant swung at the victim and he just pushed her away. Finally, she stated that she did not hear arguing while the couple were outside either and, when she looked out of the peephole, she saw the defendant actually stab the victim once in the chest.
Officer Smith testified that when he stopped the defendant shortly after the stabbing, he did not observe any bruises or torn clothing (which could have been viewed as possible evidence of self-defense).
In the instant case, the trier of fact, the jury, found the testimony of the State's witnesses more credible than that of the defendant. The conviction in this case obviously turned on credibility of witnesses and there is no doubt in the law of Louisiana that such credibility is legally and properly determined by the trier of fact. State v. Arnaud, 412 So.2d 1013 (La.1982). When the testimony is conflicting, the credibility of witnesses is a matter within the sound discretion of the trier of fact. Such factual determinations will not be disturbed on review unless clearly contrary to the evidence. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Klar, 400 So.2d 610 (La.1981); State v. Butler, 450 So.2d 764 (La.App. 5 Cir.1984).
In our opinion, the evidence submitted by the State, viewed in the light most favorable to the prosecution, establishes that at the time of the stabbing the defendant had neither reason to believe that she was in imminent danger of losing her life or great bodily injury, nor was deadly force necessary to prevent the danger. Accordingly, the jury was well within its sound discretion in reaching this conclusion and this assignment is without merit.
Assignment of Error No. 2
Defendant argues that the evidence presented at trial was not sufficient to sustain a conviction of second degree murder *1351 and that the evidence could only support a conviction of manslaughter.
In Jackson v. Virginia, supra, the standard of review by an appellate court of a claim of insufficient evidence was set forth as being: "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [the defendant guilty of] the essential elements of the crime beyond a reasonable doubt." See also State v. Brooks, 505 So.2d 714 (La.1987) cert. den., Brooks v. Louisiana, ___ U.S. ___, 108 S.Ct. 337, 98 L.Ed.2d 363 (La.1987).
In this case, the defendant was charged with and convicted of second degree murder in violation of LSA-R.S. 14:30.1. The pertinent part of the statute provides:
Second degree murder is the killing of a human being;
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
Accordingly, the State must show that the defendant 1) killed the defendant; and 2) that the defendant had the specific intent to kill or to inflict great bodily harm.
Here, the State presented an eye witness who testified that she saw the defendant stab the victim once. The autopsy of the victim revealed that he died of a single knife wound which entered his heart. The State presented sufficient evidence to show that the defendant killed the victim (and, as previously noted, also negated self-defense).
To maintain the conviction of second degree murder, the State must also have proven that the defendant had the specific intent to kill or to inflict great bodily harm. This court in State v. Edge, 504 So.2d 1169 (La.App. 5 Cir.1987), writ denied 507 So.2d 226 (La.1987) discussed when specific intent is present as follows:
Specific criminal intent exists when the circumstances indicate that the defendant actively desires the prescribed criminal consequences to follow his act. R.S. 14:10(1). Specific intent, being a state of mind, need not be proven as fact, but may be inferred from the circumstances of the transaction and the action of the defendant. R.S. 15:445; State v. Fuller, 414 So.2d 306 (La.1982); State v. Davis, 496 So.2d 1197 (La.App. 5 Cir.1986). The existence of specific intent is an ultimate legal conclusion to be resolved by the fact finders. State v. Graham, 420 So. 2d 1126 (La.1982); State v. Davis, supra. The reviewing court's task is to determine whether the evidence, both direct and circumstantial, when viewed in the light most favorable to the prosecution, is sufficient to allow a rational trier of fact to conclude that the defendant had the specific intent to kill or to inflict great bodily harm beyond a reasonable doubt. See State v. Howard, 443 So.2d 632 (La.App. 3 Cir.1983) writ denied 444 So.2d 1215 (La.1983).
In support of her contention that the facts of this case only support a conviction of manslaughter, defendant cites State v. Lombard, 486 So.2d 106 (La.1986) appeal on remand for resentencing 501 So.2d 889 (La.App. 5 Cir.1987), a case in which the Supreme Court modified a verdict of second degree murder to render a conviction for manslaughter.
In Lombard, at pages 110-111, the applicable law was discussed as follows:
Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La.R.S. 14:31(1). [footnote 8] Thus, the presence of `sudden passion' or `heat of blood' distinguishes manslaughter from murder. The court has stated on several occasions, however, that `sudden passion' and `heat of blood' are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them.
*1352 State v. Tompkins, 403 So.2d 644 (La. 1981); State v. Temple, 394 So.2d 259 (La.1981); State v. Peterson, 290 So.2d 307 (La.1974). [footnote omitted] Since they are mitigatory factors, a defendant who establishes a preponderance of the evidence that he acted in a `sudden passion' or `heat of blood' is entitled to a manslaughter verdict. [footnote omitted] Where such proof has been introduced, a second degree murder verdict is inappropriate.
Defendant contends that he met this burdenthat he proved the presence of the mitigatory factors by a preponderance of the evidence. In reviewing defendant's claim, this court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.), cert. denied, 458 So.2d 128 (1984); see also Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Moore v. Duckworth, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979); State v. Roy, 395 So.2d 664 (La.1981).
Footnote 8. La.R.S. 14:31(1) defines manslaughter as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed....
In the instant case, the defendant admits that, when she went home the first time, she put a knife in her bra. She returned and stayed with the victim rather than stay home alone, which would have been the logical thing for her to do if she feared for her safety. Additionally, Robertson testified that the defendant slashed out at the victim while inside the bar. Finally, Robertson also testified that the defendant, outside the bar, stabbed her husband once in the chest, a wound that caused his death.
The defendant alleges that a preponderance of the evidence shows the stabbing took place as a result of an argument that she claims was off and on all evening and resulted in the victim hitting her at least twice. However, Robertson testified that during the entire time the couple was in the bar she did not hear any argument until the defendant slashed out at the victim the first time. Consequently, it is apparent if there was any sudden passion or heat of blood, it had sufficiently abated at the time the fatal stab wound was inflicted. And, finally, Officer Smith, who saw the defendant shortly after the stabbing, stated that the defendant was lucid and he saw no signs of a physical struggle.
We find, therefore, that a rational trier of fact could properly have concluded that the mitigatory factors were not established by a preponderance of the evidence. This assignment also lacks merit.
We have reviewed the record for any errors patent. Our review discloses two patent errors, but neither of them is reversible error.
Specifically, the defendant was sentenced immediately after the trial judge denied her motion for a new trial, but the record does not indicate that the defendant waived the sentencing delay of twenty-four hours required by LSA-C.Cr.P. art. 873. However, there is no showing of prejudice as a result of the failure to comply with that article. The trial court had no discretion in sentencing, as the life sentence is mandatory for the crime of which she was convicted. Accordingly, a remand for resentencing is not required. State v. White, 404 So.2d 1202 (La.1981).
The last patent error we find is that the minute entry, the transcript and the commitment *1353 all fail to show that defendant was given credit for time served. LSA-C.Cr.P. art. 880 requires a court, when imposing sentence, to give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. Accordingly, we shall order that the commitment and minute entry be amended to give the defendant credit for time served.
Accordingly, we affirm the defendant's conviction and sentence as amended. The case is remanded to the district court for the purpose of amending the commitment to reflect the defendant is to be given credit for time served to the date of imposition of sentence.
AFFIRMED AND REMANDED WITH ORDER.