549 So.2d 409 (1989)
STATE of Louisiana
v.
Ernest STARKS.
No. 89-KA-193.
Court of Appeal of Louisiana, Fifth Circuit.
September 5, 1989.
*410 John M. Mamoulides, Dist. Atty., Andrea Janzen, Dorothy A. Pendergast, Asst. Dist. Attys., Louise Korns, Of Counsel, Office of the Dist. Atty., Gretna, for plaintiff-appellee.
Martha Sassone, Staff Appellate Counsel, Gretna, for defendant-appellant.
Before KLIEBERT, GOTHARD, JJ., and TIEMANN, J. pro tem.
KLIEBERT, Judge.
Ernest Starks, defendant, appeals his conviction, by a twelve member jury, of the second degree murder (LSA-R.S. 14:30.1) of William Barrow, III. He was sentenced to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the following reasons we affirm defendant's conviction and sentence and remand the case to the trial court in order to amend the commitment and minute entry of the sentencing to reflect credit for time served.
On June 18, 1987, defendant was indicted for the second degree murder of William Barrow, III, hereafter Barrow, who had been shot and killed on May 28, 1987. Defendant pled not guilty and not guilty by reason of insanity. Initially defendant was found by a sanity commission to be legally insane and unable to assist counsel with his defense. Therefore, he was committed to the custody of the Louisiana Department of Health and Human Resources pursuant to La.C.Cr.P. Article 648.1. However, he was again examined and on January 28, 1988 and February 10, 1988 found to be legally sane at the time of the crime and able to assist counsel with his defense.
At the time of the shooting, the defendant, the decedent Barrow, Michelle Carter (Barrow's girlfriend) and Brian Alexander lived together at 1024 Pailet Street in Harvey, Louisiana.
Trial testimony indicates the defendant and the victim had been arguing for several months before the shooting regarding household matters; however, no physical violence was ever observed between the two. The defendant testified that Barrow *411 abused him and treated him cruelly. More specifically, he said Barrow put restrictions on his use of the telephone, did not like the defendant to have company, and shot defendant's two cats. Additionally, he said Barrow did not like it when he fed the birds; that he took the knob off of the television so defendant could not watch it, and Barrow played the stereo very loud.
On the morning of the shooting, the defendant and Barrow had a disagreement over some missing face towels. Barrow then left the house to go to work. Between 10:30 and 11:00 a.m. Barrow, while at work, called the defendant and told him that he was not going to have any more visitors because too many things were missing from the house. Barrow also told the defendant that he was going to come home to "kick his ass" and throw him out of the house. In reply, the defendant told him to "come on." The defendant testified that when he found out that Barrow was coming home he became nervous and got one of his guns, loaded it, and put it under his pillow.
Barrow arrived at the house approximately 30 minutes after his phone conversation with the defendant. As Barrow passed the defendant's bedroom, he pointed his finger at him and again told him he was going to "kick his ass" and throw him out of the house. Barrow, however, proceeded into his own bedroom to use the telephone. While on the phone, Barrow, for a third time, told defendant that he was "going to kick his ass" and throw him out of the house. The defendant then got up from his bed, walked to the doorway and shot Barrow in the head. Barrow was taken to the hospital. He died two days later from the gunshot wound. Michelle Carter was in the house at the time of the shooting; however, she was not available to testify at trial.
Before trial, defendant filed a motion to suppress a statement given to police because it was not recorded and admitted in its entirety as required by LSA-R.S. 15:450.[1] The trial court denied the motion to suppress and defendant applied to this court for supervisory relief (No. 88-K-742) which was denied on October 18, 1988.[2] Defendant then applied to the Louisiana Supreme Court for supervisory relief (No. 88-KK-2554). The Supreme Court affirmed the trial court's refusal to suppress the taped statement but allowed defendant the opportunity to present evidence concerning the unrecorded portion of his statement. Further, the trial court was ordered to require the state to comply with La.C. Cr.P. Article 716(C).[3]
On appeal, defendant alleges twelve assignments of error. However, only five are before this court; the others have not been briefed and are therefore considered abandoned pursuant to Uniform Rules of CourtCourts of AppealRule 2-12.4; State v. Issac, 527 So.2d 1045 (5th Cir. 1988), writ denied 532 So.2d 175 (La.1988).
The five alleged errors briefed by defendant concern three issuesfirst, the propriety of the trial court's ruling on his motion to suppress; second, whether the evidence was sufficient to support a conviction; and third, defendant requests that we review the record for errors patent.
We consider first the trial court's denial of defendant's motion to suppress the defendant's inculpatory statement because it was not recorded and admitted in its entirety. Although the validity of the trial court's refusal to suppress the statement has already been adjudicated adversely to the defendant [State v. Starks, 531 So.2d *412 766 (La.1988)], defense counsel contends the prior rulings are not binding because the defendant's mental and physical condition rendered him unable to assist in his defense; i.e., testify as to what was said in the unrecorded portions of the statement.
However, the trial court found the defendant legally sane and competent to assist counsel with his defense. Moreover, the doctors who testified at the sanity hearing testified here. Based on that evidence we cannot say the trial judge erred in reaching its conclusion the defendant was sane and capable of assisting in his defense. Defense counsel's contention is therefore without merit. Since the Louisiana Supreme Court already ruled the trial court properly denied the motion to suppress, we are precluded from again considering the issue. See State v. Yelverton, 515 So.2d 828 (5th Cir.1987).
Secondly, defendant alleges the trial court erred in denying his motion for post verdict judgment of acquittal and motion for new trial because the evidence presented by the state was not sufficient to support a conviction.
Since both motions are based on the insufficiency of the evidence, the standard upon which the evidence is to be analyzed is that stated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); i.e., the evidence is insufficient if, when viewed in the light most favorable to the state a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. See State v. Allen, 440 So.2d 1330 (La.1983); State v. Joseph, 454 So.2d 237 (5th Cir. 1984).
The defendant was charged and convicted of second degree murder under LSA-R.S. 14:30.1(A)(1) which defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
Defendant admits he shot and killed Barrow; however, he maintains his actions were justified and/or he was legally insane at the time of the shooting. Therefore, the first element of the crime was established; a human being was killed.
Secondly, the state must prove defendant had the specific intent to kill or to inflict great bodily harm. Initially, we note defendant's own experts testified he was sane when the act was committed. In State v. Edge, 504 So.2d 1169, 1172 (5th Cir.1987), writ denied 507 So.2d 226 (La. 1987), this Court stated:
"Specific criminal intent exists when the circumstances indicate that the defendant actively desires the prescribed criminal consequences to follow his act. R.S. 14:10(1). Specific intent, being a state of mind, need not be proven as fact, but may be inferred from the circumstances of the transaction and the action of the defendant. R.S. 15:445; State v. Fuller, 414 So.2d 306 (La.1982); State v. Davis, 496 So.2d 1197 (La.App. 5th Cir.1986). The existence of specific intent is an ultimate legal conclusion to be resolved by the fact finders. State v. Graham, 420 So.2d 1126 (La.1982); State v. Davis, supra. The reviewing court's task is to determine whether the evidence, both direct and circumstantial, when viewed in the light most favorable to the prosecution, is sufficient to allow a rational trier of fact to conclude that the defendant had the specific intent to kill or inflict great bodily harm beyond a reasonable doubt. See State v. Howard, 443 So.2d 632 (La.App. 3rd Cir.1983) writ denied 444 So.2d 1215 (La.1983)."
The state presented sufficient evidence to support a finding defendant had the specific intent to kill or to inflict great bodily harm. After Barrow called defendant and told him he was coming home to "kick his ass" and throw him out of the house, defendant got his gun, loaded it, placed it under his pillow, then waited for Barrow to come home. Barrow arrived, repeated his threats twice more, and was using his bedroom phone when defendant entered the room and fired one shot, striking Barrow in the head. After the arrival of the police, defendant stated to detectives that he meant to hit Barrow. Clearly defendant had the specific intent to kill or inflict great bodily harm.
*413 At trial, defendant maintained the homicide was justified because he reasonably believed his life was in danger and he needed to kill to preserve his own life. When a defendant claims self-defense, the state must meet the Jackson sufficiency of evidence standard and has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986).[4] The relevant inquiry on appeal is whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. Jackson, supra; State v. Garcia, supra; State v. Gibson, 529 So.2d 1347 (5th Cir.1988).
LSA-R.S. 14:20 provides a homicide is justifiable:
"(1) when committed in self defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger."
This court has previously held that the adjudication of the defendant's culpability by the trier of fact focuses on a two-fold inquiry:
1) From the facts presented, could the defendant have reasonably believed his life to be in imminent danger, and
2) Was deadly force necessary to prevent the danger?
State v. Dill, 461 So.2d 1130 (5th Cir.1984), writ denied 475 So.2d 1106 (La.1985); State v. Gibson, supra.
In the present case, the evidence established the defendant and Barrow argued over household matters but no physical violence was reported. Defendant testified that Barrow never beat him. However, on the morning of the shooting, Barrow called defendant on the phone and stated he was going to "kick his ass" and throw him out of the house. Thirty minutes later, Barrow arrived home, repeated the threat, then proceeded to use the telephone. While on the phone the threat was again repeated. Barrow made no advances toward defendant and there was no indication the threats would be carried out. However, defendant testified he knew Barrow kept a gun in his room and was afraid Barrow would kill him.
Instead of leaving when Barrow called home, defendant loaded his gun and waited for Barrow's arrival. Barrow arrived and went to his room to use the phone. While he was on the phone, defendant entered the room and shot Barrow once in the head.
The state clearly met its burden in establishing that at the time of the shooting, defendant had neither reason to believe that he was in imminent danger of losing his life nor of suffering great bodily injury at the hands of Barrow; nor was deadly force necessary to prevent the danger. Accordingly, the jury reached a proper conclusion that defendant was guilty of the second degree murder of William Barrow, III.
Finally defendant asks this Court to review the record for errors patent. Our review reveals two errors; however, neither is reversible error.
La.C.Cr.P. Article 880 requires a court to give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The minute entry, transcript, and commitment fail to show defendant was given credit for time served. Therefore, we remand for the trial court to amend the minute entry and commitment to give defendant credit for time served.
The record also reveals the trial judge failed to wait the required 24-hour delay between the denial of defendant's motions for new trial and post-verdict judgment of acquittal and sentencing. However, when the trial judge denied defendant's motions, defense counsel stated "we stand ready for sentencing," impliedly waiving the delay as allowed under La.C. Cr.P. Article 873. In any event, such error is harmless as defendant has neither alleged nor shown prejudice as a result of the failure to observe the delay. See State v. Davis, 496 So.2d 1197 (La.App. 5th Cir. *414 1986). We note no other errors patent on the face of the record.
For the foregoing reasons defendant's conviction and sentence are affirmed. However, the case is remanded and the trial court is ordered to amend the commitment and the minute entry of the sentencing to reflect credit for time served.
AFFIRMED AND REMANDED.
NOTES
[1] LSA-R.S. 15:450 provides as follows:

"Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford."
[2] This court denied writs finding no abuse of the trial court's discretion.
[3] La.C.Cr.P. Article 716(C) provides as follows:

"Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer."
[4] Remanded for resentencing.