461 So.2d 1130 (1984)
STATE of Louisiana
v.
Robert L. DILL.
No. 84-KA-147.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1984.
*1132 John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Asst. Dist. Atty., Parish of Jefferson, Gretna, for plaintiff-appellee.
John H. Craft, I.D.B., Gretna, for defendant-appellant.
Before BOUTALL, KLIEBERT and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Robert L. Dill, was charged with first degree murder. After he was arraigned and entered a plea of not guilty; the State amended the indictment to second degree murder R.S. 14:30.1. He was again arraigned and again entered a plea of not guilty. Extensive discovery was requested by the defense and satisfied by the State. The defendant waived his right to a trial by jury and trial was held. He was found guilty of manslaughter and sentenced to five years in the custody of the Department of Corrections. From this conviction and sentence he now appeals.

FACTS
After work on January 23, 1981, Andrew Lauchlan and Terry Greenwood went to Lauchlan's house for a few beers. After a time the two men left and Greenwood accompanied Lauchlan to a friend's house. They remained there a while and departed late in the evening with Lauchlan driving his 1976 Ford pickup truck. Greenwood asked Lauchlan to give him a ride to the Miki Lounge to see someone about money owed to him. Lauchlan complied with the request and the two men arrived at the lounge a little before midnight. Lauchlan was having trouble with his truck and because Greenwood had indicated that he wasn't going to stay in the lounge any length of time, Lauchlan stayed outside in the truck. Several minutes later Greenwood exited the bar carrying two beers. Lauchlan told him that the truck wasn't running, apparently because of a low battery, and Greenwood said he would try to get a "jump" from another car in the parking lot.
While Lauchlan watched, Greenwood approached a car about fifteen feet away and engaged in conversation with the three occupants. From what he overheard, one of the passengers offered to assist Greenwood for $5.00. The conversation became more heated and Lauchlan stepped out of his truck to observe the situation more closely. As Greenwood walked toward the driver's door of the car, Lauchlan saw the driver simultaneously open the door and reach down between the front seats. As the driver exited the car, he pointed an object at Greenwood. Almost instantaneously Lauchlan heard a gun shot and saw Greenwood fall to the ground. He ran to the body of his friend and exclaimed to the driver of the car, "You shot him". The driver hurriedly reentered his car and began to back out of the parking lot. As he did so, Lauchlan reached out, straightened *1133 the bent license plate on the car, and memorized the license number. This he later gave to the investigating officer along with a description of the vehicle. Following the shooting, he left his friend momentarily to call an ambulance.
The Jefferson Parish Sheriff's Office was notified of the shooting at approximately 12:08 a.m., on the morning of January 24th. Deputy Tureaud arrived at the scene several minutes later. The victim, Terry Greenwood was removed to West Jefferson General Hospital where he was pronounced dead on arrival from a gunshot wound to the head. Tureaud broadcast a description of the wanted vehicle and the Homicide Division was notified.
Detective Steve Buras began his investigation at 12:45 a.m. on the 24th of January. At 4:22 a.m. Dill's car was located at Rose's Lounge, apparently abandoned. Detective Buras proceeded to that location to examine the vehicle. He found both an empty gun holster and an empty knife sheath inside the car. After interviewing Andrew Lauchlan and Jerry Meadows, Detective Buras secured an arrest warrant for Robert Dill on January 27, 1981. He was arrested in late October or early November of 1981 in Miami, Florida.
On appeal, the defendant thru counsel makes the following assignments of error:
1. The evidence presented by the state was not sufficient to justify a verdict of guilty of manslaughter.
2. The state failed to meet its burden of proving beyond a reasonable doubt that defendant did not kill the victim in self-defense.
3. Also assigned as error, are any and all errors patent on the face of the record.

ASSIGNMENT OF ERROR NO. 1 & NO. 2
Because of their similarity, these two assignments are consolidated for our review.
The thrust of the defense argument is that the state failed to offer sufficient evidence to support the verdict of manslaughter rendered by the trial judge. More specifically, the defense contends the state failed to negate the defense assertion that the homicide was committed in self defense.
"A claim of insufficient evidence is judged by whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Brown, 414 So.2d 726 (La.1982); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." State v. Freeman, 447 So.2d 1145, 1158 (La.App. 3rd Cir.1984).
The defendant was convicted of manslaughter, in violation of R.S. 14:31. Manslaughter, as relevant to the instant prosecution is defined as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ....
The defendant has urged that the homicide was justified under the theory of selfdefense.
La.R.S. 14:20 at the time of the offense was committed stated:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily *1134 harm, by one who reasonably believe that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
(3) When committed against a person whom one reasonably believes to be likely to use any unlawful force against a person present in a dwelling or a place of business while committing or attempting to commit a burglary of such dwelling or business. The homicide shall be justifiable even though the person does not retreat from the encounter.
"A defendant in a homicide prosecution who asserts that he acted in self defense does not have the burden of proof on that issue because the state bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self defense. State v. Patterson, 295 So.2d 792 (La.1974); State v. Collins, 306 So.2d 662 (La.1975). "State v. Brown, 414 So.2d 726, 728 (La.1982). See also State v. Howard, 443 So.2d 632 (La.App. 3rd Cir.1983) writs denied 444 So.2d 1215 (La.1984); State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984) writs denied 449 So.2d 1356 (La.1984).
To meet its burden of proof, the state offered the testimony of two witnesses, Andrew Lauchlan, the companion of the victim at the time of the shooting, and Detective Steve Buras, the investigating homicide officer from the Jefferson Parish Sheriff's Office. Lauchlan testified that the victim was unarmed at the time of his encounter with the defendant and made no overt offensive gesture toward Dill to provoke the shooting. Although he stated that just prior to the shooting he heard raised voices, he was unable to recognize any of the words said by either party. He offered that the victim usually carried a pocket knife while working, but was unarmed on the night of his death. He stated that Greenwood's pocket knife was found the day after his death in the van of a friend, and given to his mother on the day of the funeral. Detective Buras testified as to the progress of the investigation from his arrival on the scene to the issuance of the arrest warrant for Mr. Dill several days later. He additionally identified an empty knife sheath and an empty gun holster found in the defendant's apparently abandoned automobile shortly after the shooting.
The defense offered several witnesses to establish that the homicide was justifiable. Eugene Kirk, a mutual friend of both the victim and the defendant, admitted that after the shooting he found a pocket knife and some coins under the victim's leg and took them. He confessed that when the police asked about a knife, he denied taking it and later threw it away. On cross-examination he testified that the knife resembled one owned by Jerry Meadows, a passenger in the defendant's car at the time of the shooting.
Ross McCord, a friend of Dill's testified that he observed the incident from the parking lot between the Happy Landing Bar and the Miki Lounge. He indicated he heard a lot of shouting and "bad words" and noticed a man near the car make a lunge toward the car window with a knife and then he heard a shot. On cross-examination he acknowledged that he said nothing to the police regarding the incident. He stated that he only knew the defendant was accused of the shooting when they met in the Correctional Center several months prior to trial. It was coincidentally noted by the state that Dill and McCord were represented by the same defense counsel. Jerry Meadows, a passenger in Dill's vehicle testified that the victim came at the defendant with a knife.
The prosecutor, on cross-examination, accused Meadows of placing his knife beside the victim's body. Meadows denied the accusation vehemently and denied also ever having lent his knife to a Eugene Kirk. He admitted to a problem with alcohol, but clearly remembered that the victim was *1135 armed with a knife immediately prior to the shooting.
The defendant testified in his own behalf. He stated that following a verbal exchange, the victim lunged at him through the open car window armed with a knife. In reaction to the victim's aggression, he reached between the seats of the car and emerged with a gun that a friend had given him to clean. He fired at Greenwood from within the car noting; "[i]ts a wonder I didn't hit the car instead of the man. I stood just as good a chance of hitting the car with the exception that his head was partially down...." He admitted fleeing the scene of the homicide but stated he was in shock. He told of his attempts to find out if a warrant had been issued for him before leaving town, but admitted that he didn't return from Florida even after he found that a murder warrant was outstanding.
The law is well established that "[w]hen there is conflicting testimony as to a factual matter, the question of credibility of witnesses is within the discretion of the trier of fact." See State v. Jacobs, 435 So.2d 1014, 1019 (La.App. 1st Cir.1983); State v. Klar, 400 So.2d 610 (La.1981).
On appeal, the function of a reviewing court is not to reassess the credibility determinations of the fact finder but only to determine if the evidence offered was sufficient to support the conviction as required by Jackson v. Virginia, supra. See State v. Richardson, 425 So.2d 1228 (La. 1983); State v. Lee, 445 So.2d 54 (La.App. 4th Cir.1984); State v. Jacobs, supra.
The state offers that the verdict rendered by the trial judge reflects a credibility evaluation not to be usurped on appeal. The following is excerpted from the state's brief:
"Even when reading the cold pages of the record in this case the defense witnesses come across as unworthy of belief. Certainly the determination of the trial judge who saw and heard these witnesses should be controlling on the issue of credibility before this court."
But if, as the state argues, the defendant shot the unarmed victim having the specific intent to do so, without passion or provocation, the offense committed was second degree murder.
It is clear from the verdict that the trial judge did not entirely reject the testimony of the defense witnesses; for while he did not find the homicide justifiable under the theory of self-defense he also did not find the defendant entirely culpable so as to be guilty of murder.
It appears obvious that there is only a tenuous distinction between a homicide which is manslaughter and one which is justifiable.
In LaFave, Scott, "Handbook on Criminal Law", Section 77, p. 583, the editors note:
A modern tendency, not yet far advanced, is to add other extenuating circumstances in the category of voluntary manslaughter, so as to include such intentional homicides as those committed in an "imperfect" right of self-defense or defense of others, or of crime-prevention, or of the defenses of coercion or necessity, in which the killing, though not justifiable, is not bad enough to be murder.
And explains:
"Imperfect" Right of Self-Defense
In order for a killer to have a "perfect" defense of self-defense to homicide, (1) he must be free from fault in bringing on the difficulty with his adversary; and (2) he must reasonably believe (though he need not correctly believe) both (a) that his adversary will, unless forcibly prevented, immediately inflict upon him a fatal or serious bodily injury, and (b) that he must use deadly force upon the adversary to prevent him from inflicting such an injury. If one who is not the aggressor kills his adversary with these two actual and reasonable beliefs in his mind, his homicide is justified, and he is guilty of no crimenot murder, not manslaughter, but no crime. [footnote omitted]
What if a defendant who did not initiate the difficulty honestly but unreasonably believes either that he is in danger *1136 of the injury or that killing is the only way to prevent it; or, even though he reasonably believes these things, he was at fault in bringing about the difficulty? He cannot have the defense of self-defense, for that requires both freedom from fault in the inception of the difficulty and the entertainment of beliefs which are reasonable. But is murder the only alternative? Or should the matter fall into the category of manslaughter, consisting of those homicides which lie in between murder and no crime. Some cases so hold, whether the reason for the "imperfection" of the defense is the defendant's own fault in bringing on the difficulty [footnote omitted] or the reasonableness of the honest but erroneous beliefs which he entertains. [footnote omitted]
The theory that a verdict of manslaughter (in some cases) reflects a finding by the trier of fact that the accused had only an "imperfect right of self-defense" has not been formally accepted in Louisiana, but jurisprudence exists which suggests its use to some degree.
Initially, in State v. Peterson, 290 So.2d 307 (La.1974) the Louisiana Supreme Court observed the existence of provocation or "heat of blood" in a murder prosecution was in the nature of a defense rather than an element of the offense of manslaughter. The following is excerpted from that opinion:
All of the elements of the two crimes, murder and manslaughter, are identical; there exists only one difference. That is, the statutory definition of manslaughter provides that the killing, which would be murder under 14:30(1), be "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." If passion reduces a homicide requiring the same scienter, specific intent, from murder to a less serious crime, manslaughter, then lack of passion, may realistically be seen as the additional element which elevates a manslaughter to murder. The presence of passion, however, is in the nature of a defense and, for this reason, the additional "element" of lack of passion need not be proven by the state in a murder-prosecution. Therefore, the the presence of passion is not an additional element of the crime of manslaughter; rather, it is a factor which exhibits a degree of culpability less than that present when the homicide is committed without passion caused by provocation. [emphasis added]
The designation of passion or provocation as a mitigatory factor or defense to a prosecution for a murder remains viable. See State v. Temple, 394 So.2d 259 (La. 1981); State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984).
In State v. Bryan, 398 So.2d 1019 (La. 1980), the court alluded to the relationship between the defense of justification and the existence of provocation.
In Bryan, supra, the defense sought to establish that the victim, a police officer, had used unreasonable force to effect an arrest. In order to repel the alleged unprovoked beating by the officer, the defendant had armed himself with a nearby weapon and shot the officer. Remanding the case for an evidentiary hearing on the motion for new trial the court observed by footnote:
[E]ven if the evidence of the allegedly unprovoked and unprivileged assaultive behavior was not sufficient to establish justification, it was relevant for the purpose of presenting to the jury the theory that defendant was guilty only of manslaughter, by showing that the killing was committed in a "heat of passion" provoked by Taylor's misconduct. See R.S. 14:31(1). See also State v. McAllister, 366 So.2d 1340 (La.1978) and State v. Peterson, 290 So.2d 307 (La.1974), discussing "heat of passion" and "provocation" as mitigating elements in the "nature of a defense".
Bryan, supra at 1021, n. 2. See also State v. Jackson, 419 So.2d 425, 430 n. 4 (La. 1981).
*1137 The cases appear to establish the interrelationship noted by Professor LaFave between the offenses of murder and manslaughter and the "defenses" of provocation (the "imperfect" defense, mitigating criminal culpability) and justification (the "perfect" defense negating criminal culpability).
When the verdict of the trial judge is viewed in the light of the above cases and the explanation of Professor LaFave, the rationale for the verdict becomes clear and the sufficiency question is more easily addressed.
The evidence submitted by the state, viewed in the light most favorable to the prosecution, establishes that the defendant shot the victim with the specific intent to kill him or at the very least inflict great bodily harm on him.
R.S. 15:445 provides in pertinent part:
"[T]hough intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
It is clear from the testimony that as the victim approached the car during the argument the defendant armed himself with a loaded gun and got out of the car to meet the victim's advance. While Dill testified that he never left the front seat and could have just as easily shot the interior of the car as Greenwood, at least one witness stated that he was outside of the car at the time of the shooting, giving him a clear shot at the victim from only a short distance away (3-5 feet). Without warning the victim in any way of the escalation of the argument, he shot the victim in the face and fled the scene without rendering assistance. The location of the wound, the forehead above the right eye, would appear to indicate that it was inflicted with the intent to kill.
But in order to prove the homicide murder, the state was also required to negate the assertion that the homicide was justifiable; committed in self-defense.
As noted previously R.S. 14:20, (as in effect at the time of the offense) provided in pertinent part:
"A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger;...."
Thus the determination of the defendant's culpability by the trier of fact focuses on a two fold inquiry:
1. From the facts presented could the defendant reasonably have believed his life to be in imminent danger and
2. Was deadly force necessary to prevent the danger.
The state offered the testimony of Andrew Lauchlan to establish that the victim was unarmed at the time of his encounter with the defendant. But as noted by the Supreme Court in State v. Jackson, supra, "[t]his [lack of a weapon on the victim's body] was, of course, not dispositive of the issue of self defense, since it is the reasonableness of apprehension, and not the actuality of danger, which determines the question of self defense under R.S. 14:20." Supra, at 430, n. 3.
There is no question that the two men were engaged in a heated argument at the time of the shooting. The victim approached the car during the encounter to continue the altercation. From the relative sizes of the two men it appears that Dill (5'4", 145 lbs.) would have received the worst end in a fight, even if the victim (6'0", 200 lbs.) had been unarmed. Accordingly, his apprehension of receiving great bodily harm could be deemed reasonable.
However, it does not appear that the use of deadly force was justified.
In State v. Collins, 306 So.2d 662, 663 (La.1975) the court indicated that it was a question for the trier of fact "to determine whether it was reasonably necessary for the defendant to kill in order to save himself."
*1138 Citing Collins, supra, a panel of the Third Circuit observed in State v. Howard, 443 So.2d 632 (La.App. 3rd Cir.1983) writ denied 444 So.2d 1215 (La.1984), that "[a]lthough there is no unqualified duty to retreat, the possibility of escape is a recognized factor in determining whether or not a defendant had the reasonable belief that deadly force was necessary to avoid the danger. [footnote omitted]"
In the present case, it would appear that the trier of fact could readily conclude that the defendant possessed the ability to retreat or withdraw from the impending conflict. He was in an automobile. It was possible to have driven off or at the very least, rolled up the window to prevent any attack by the victim. Rather, the testimony reflected that he got out of the car to meet the victim's advance.
It was likewise evident that deadly force was not mandated by the situation. By the defendant's own admission he issued no warning to the victim. Nor, apparently when firing at a close range did he aim for a less vital area than the head.
Since an examination of the testimony reflects that the use of deadly force was not warranted by the situation, even assuming the victim was armed with what was described as a "pocket knife", the state fulfilled its burden of proof of negating the justification defense, and accordingly, proved second degree murder; "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; ...." See R.S. 14:30.1. But all the witnesses who observed the shooting testified that the victim and the defendant were engaged in a verbal dispute immediately prior to the shooting. The presence of the mitigatory factors of provocation plus passion reduce the culpability of the defendant and accordingly, the verdict of manslaughter was appropriate under the circumstances.
Accordingly, we find no merit in these assignments of error.

ASSIGNMENT OF ERROR NO. 3
La.C.Cr.P. art. 920 provides:
"The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
Our review of the case does not reveal any error on the face of the record. This assignment has no merit.

DEFENDANT'S PRO SE ASSIGNMENTS OF ERROR
The defendant appearing pro se has filed a supplemental brief presenting three additional assignments of error for our review.
1. Conviction obtained by the unconstitutional failure of prosecutor to disclose to the defendant evidence favorable to the defendant.
2. Defendant omitted a No. 2.
3. Denial of appeal and assistance of counsel on appeal.
4. Ineffective assistance of counsel created not only possibility of prejudice but that it worked to his actual and substantial disadvantage.

SUPPLEMENTAL ASSIGNMENT NO. 1
The record reveals that in the state's answers to the Bill of Particulars, it did not have any exculpatory evidence or evidence favorable to the defendant.
In response to a subpoena issued to the sheriff's office, a hearing was held to determine if two statements allegedly referenced in the District Attorney's file were in the possession of the Sheriff's office and were exculpatory in nature. The officer in charge testified no statements were contained in the case record.
The state likewise stated that they had no exculpatory statements in their files.
In an "Amended Request and Motion for Discovery, Disclosure and Inspection" the defense again tried to obtain copies of certain *1139 statements made by a Jim Luckett and a Jerry Meadows.
The trial court set the matter for a hearing and denied the motion.
As noted in State v. Vaccaro, 411 So.2d 415, 419 (La.1982). "[i]t is well settled that the state may not suppress evidence that is favorable to the defendant and material to guilt or punishment when that evidence has been requested by [the] defendant. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Maryland, supra, [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)]; State v. Scott, 400 So.2d 627 (La. 1981); State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977)."
However, it does not appear from the record that the defendant established the existence of any written statements from Luckett, Kirk or Lauchlan. The testimony was to the contrary despite the fact that the defense was given ample opportunity prior to the trial of the case to traverse the prosecutor's assertion that no statements were contained in his case file. Further, two of the witnesses whose statements were requested testified at trial and were not examined concerning any previous statements. The investigating homicide officer, Steve Buras, who allegedly took the statements, also testified at the trial and was not questioned about them.
Nor did the defense establish that the alleged statements were exculpatory in nature so as to make the verdict unreliable because of their nondisclosure.
In the absence of such a showing, this assignment lacks merit.

SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 3 & NO. 4
These remaining two assignments address the issue of the competence of defendant's trial and appellate counsel. The law is well settled and established that such a claim is more properly raised by writ of habeas corpus at which time there can be an evidentiary hearing on the matter.
While the Supreme Court has addressed the issue on direct appeal in several cases, it appears to have done so only where "the record discloses [the] evidence needed to decide the issue", noting that such a procedure was "in the interest of judicial economy...." See State v. Ratcliff, 416 So.2d 528, 530 (La.1982). See also State v. Seiss, 428 So.2d 444 (La.1983).
In the present case, as in Seiss, supra, the defendant had filed an application for a writ of habeas corpus in the trial court raising among other issues, the "[d]enial of [an] appeal and [the] assistance of counsel on appeal." He noted in argument that his retained counsel failed to appeal the trial court's verdict and argued also that the "[i]neffective assistance of counsel created not only [the] possibility of prejudice, but that it worked to his actual and substantial disadvantage."
In support of the assertion, Dill offered specific examples of "counsel(s) acts of omissions" which he alleged were to his detriment. The trial judge, without hearing, denied the defendant's writ application noting "[t]he defendant's appeal is pending in the Louisiana 5th [Fifth] Circuit Court of Appeal. Therefore, this court must refuse to entertain the defendant's application for post-conviction relief on the authority of La.C.Cr.P. art. 924.1."
The test for evaluating the competence of trial counsel was most recently articulated by the United States Supreme Court in Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The court held:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that *1140 counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Supra, at 104 S.Ct. 2065.
In making the determination of whether the specified errors resulted in an unreliable verdict, the inquiry must be directed to whether "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 104 S.Ct. 2068.
The following are asserted by the defendant as the errors of counsel which substantially prejudiced him:
1. Failure of trial counsel to move for an appeal.
2. Failure of counsel to cross-examine the state's witnesses regarding the contents of statements possibly given to police officers following the shooting.
3. Failure of appointed appellate counsel, Joseph Montgomery, to expedite the lodging of the appeal.
4. Failure of the trial counsel to call the coroner to the stand for testimony concerning the intoxication of the victim at the time of the offense.
5. Failure of counsel to locate and subpoena for trial an additional defense witness, Calvin Erkskine.
6. Failure of trial counsel to argue the insufficiency of the state's evidence.
7. Failure of appellate counsel, Joseph Montgomery, to respond to the defendant's correspondence concerning the status of his appeal.
It would appear clear that an attorney must advise his client of his appellate rights, State v. Simmons, 390 So.2d 504 (La.1980). The failure of appointed counsel to take an appeal, where such is requested by the defendant, is ineffectiveness, per se. See Flanagan v. Henderson, 496 F.2d 1274 (5th Cir.1974).
Further in Flanagan, the court also observed that the standard used in judging the minimal competence of retained counsel is similar to that of appointed counsel.
To rectify such a failure on the part of counsel, the court, upon a finding that the right of appeal was not waived, is obliged to grant an out of time appeal. This action has already occurred in this case. The competency of the defendant's current appellate counsel has not been challenged. Accordingly, the errors asserted regarding the incompetency of previous counsel, as related to the appeal, are of little merit.
Using the standard announced in Strickland, supra, our review does not disclose that the trial errors complained of by the defendant so adversely affected the verdict as to render the proceedings unreliable.
These supplemental assignments are without merit.

CONCLUSION
For the above reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.