609 So.2d 857 (1992)
STATE of Louisiana
v.
Steven P. RADER, Alias Steven Raider.
No. 92-KA-420.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1992.
Rehearing Denied January 20, 1993.
*859 John D. Rawls, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for appellant/defendant Steven P. Rader.
Dorothy A. Pendergast, Asst. Dist. Atty., William Faust, Asst. Dist. Atty., Louis Korns, Office of Dist. Atty., Gretna, for appellee State of La.
BOWES, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Steven Rader[1], appeals from his conviction of manslaughter and his sentence to nine years imprisonment at hard labor. We affirm the conviction, amend the sentence and affirm, as amended.
Defendant, by grand jury indictment filed on April 11, 1991, was charged with manslaughter, in violation of La.R.S. 14:31. He was arraigned on April 29, 1991 and pled not guilty. Before beginning trial he waived his right to trial by a jury. Trial was held on September 16 and 17, 1991 and defendant was found guilty, as charged, of manslaughter. He was sentenced to nine years imprisonment at hard labor with the recommendation that he serve his time at a prison other than Angola. Defendant appeals herein.
The evidence shows that defendant became engaged in a fight with the victim, Anthony Sylvestri, on the evening of March 26, 1991. The victim died as a result of a stab wound to the heart. The fight took place in the victim's apartment, where he lived with a roommate, Vincent Tumminello, during a time when he was separated from his wife, Kelly Sylvestri. Before the stabbing, which occurred at approximately 9:00 p.m., defendant telephoned Tumminello, with whom he had been friends for three or four months. Defendant wanted to come over to the apartment. Tumminello told defendant that he would not be home for a couple of hours, but to call back later. Approximately ninety minutes later, around 7:00 p.m., defendant and his girlfriend, Cynthia Sedillo, arrived at the apartment. They knocked, but no one answered the front door, so they went to the back door. When defendant knocked on the French door, a pane of glass broke and fell to the ground. No one answered the door, so the couple left. Tumminello and the victim later returned to the apartment and discovered the broken glass. Tumminello called the defendant, who, after repeated questioning, eventually admitted breaking the glass. Tumminello was angry and told defendant not to "even come around here," and hung up the telephone. The defendant called back to offer to pay for the broken pane, but this time the victim answered the phone. The defendant testified that, during this conversation, the victim threatened him. The defendant hung up the telephone, but called back, again demanding to talk with Tumminello. The defendant insisted on coming to the apartment to discuss the problem and Tumminello "sarcastically" agreed. The defendant armed himself with a knife and he and Ms. Sedillo went to the apartment. Tumminello let them in.
At trial, Tumminello testified to the following events which occurred inside the apartment. The victim entered the room when defendant and Ms. Sedillo were talking to Tumminello. The victim began arguing with defendant. Ms. Sedillo pulled out the knife and Tumminello took it from her hand, went to the back door and threw the knife over a nearby fence. Tumminello returned to the living room and observed the victim strike defendant a few times, causing his mouth to bleed. The defendant then walked to the bathroom, to wash his face, and Tumminello, believing that "everything was over," began to repair the back door. The telephone rang and the victim answered it in the living room. It was the victim's wife, Kelly Sylvestri, on the phone. Tumminello saw the defendant emerge from the bathroom and then heard the victim scream "He's got a knife." *860 Tumminello ran into the kitchen and observed the two men struggling. He saw defendant, holding a knife in his left hand, and saw the victim, possibly holding a can of mace. Tumminello noticed blood on the victim's throat and lower extremity, as well as on the floor, walls, refrigerator and counter. As they continued to struggle, Tumminello jumped on defendant's back, causing him to drop the knife. Ms. Sedillo grabbed it and ran out the door. Tumminello lifted defendant off the victim and escorted him outside. The defendant then left the scene.
At trial, the defendant and Ms. Sedillo[2] testified to the following events surrounding the incident. After they entered the apartment, the victim walked into the room and immediately punched the defendant in the mouth, knocking him to the floor. The punch broke a dental plate and caused the defendant's mouth to bleed. While the defendant lay on the floor, the victim grabbed a can of mace and sprayed it in defendant's eyes. When the defendant attempted to stand, the victim struck him again, knocking him to the floor a second time. Ms. Sedillo found a knife on the floor in the living room. As soon as she picked it up, Tumminello grabbed it from her and threw it out of the back door. The victim approached Ms. Sedillo with the mace and she began to scream. The defendant stood up, drew his knife and began swinging the knife in order to defend himself and Ms. Sedillo. Tumminello jumped on the defendant's back and held his arms. The three men fell to the floor of the kitchen, with the victim facing the defendant and Tumminello on top of them. When they fell to the floor, the victim was stabbed. As the men struggled on the floor, Ms. Sedillo approached them, grabbed Tumminello's hair and yelled "Get off. That's not fair. It's two against one." During the melee, the victim bit her on the leg. She immediately withdrew, but she saw a knife slide across the floor. She picked the knife up and threw it out of the back door. Tumminello dragged the defendant off of the victim. He took the defendant outside, holding him by the neck, and told him to leave. The police and paramedics were called, but the victim died at the scene. He had suffered three stab type wounds, one of which penetrated the heart, and two superficial cuts. The next morning, the defendant was arrested and charged with second degree murder.
On appeal, the defendant asserts two errors. First, he contends that the trial judge erred in admitting into evidence, over objection, Kelly Sylvestri's repetition of her husband's narration over the telephone of what had just taken place at the apartment. Second, he asserts that the trial judge erred in ruling that the state carried it's burden of disproving self-defense beyond a reasonable doubt.
The defendant contends that the trial court erred in admitting the testimony of Kelly Sylvestri, because such testimony constituted inadmissible hearsay. Defendant asserts that the conversation does not fall within the exception to the hearsay rule, set forth in LSA-C.E. art. 801(D)(4), as follows:
D. Statements which are not hearsay.
A statement is not hearsay if:
4. Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitant of it, or form in conjunction with it one continuous transaction.
In describing that conversation, Kelly Sylvestri testified,
Okay. Anthony called me up on the phone[3] and told me he had to get in a fight because the guy wouldn't leave the house. And that um, he broke in and broke Vincent's window or door. I'm not sure which cause I could hear Vincent through the phone hammering calling *861 there and they told him not to come over there but evidently he came anyway. They had a fight.
Okay, So. um, he said, "I had to fight with the guy, he wouldn't get out of the house". And he said, "That his girlfriend pulled a knife on him," and um, but he said, "Don't worry about it everything's over with, everything's under control". And um, then all of a sudden he said, um, "I have to go, I gotta go." And, he hung up on me.
The statements, excluding the impulsive and spontaneous closing statements that "I have to go, I gotta go," are a narrative declaration of the details of the events and a result of reflective thought.[4] Although the statements were made by the victim just prior to the stabbing, no one testified to his emotional state, which would have established that the statements were made under the immediate pressure of the occurrence. On the contrary, the victim not only informed Kelly Sylvestri of the altercation, but also related details of the events which preceded the fight and told her it was over. Thus, the statements should have been excluded as hearsay, and the failure to do so was error.
The erroneous admission of evidence may be considered harmless, or not. The standard to be used, in determining whether the erroneous admission of evidence requires reversal of a defendant's conviction, is whether there is a "reasonable" possibility that the evidence might have contributed to the verdict, and whether the reviewing court is prepared to state beyond a reasonable doubt, that it did not. State v. Romero, 574 So.2d 330 (La.1990); State v. Ehrhard, 576 So.2d 1209 (La.App. 5th Cir.1991). The statements concerning the altercation and the preceding events related facts which were uncontradicted and established through the testimony of Tumminello, Ms. Sedillo and the defendant. Corroboration of Tumminello's testimony regarding a lull in the altercation during which the defendant went to the bathroom, the victim using the telephone and Tumminello attempting to repair the back door, as described in the victim's narrative, was also accomplished through Kelly Sylvestri's testimony that the victim called her, then abruptly hung up, and that during that conversation she could hear hammering. Consequently, we find that the erroneous admission of evidence did not contribute to the verdict and was harmless, beyond a reasonable doubt.
The defendant next contends that the State failed to disprove the justification of self-defense, beyond a reasonable doubt.
When a defendant claims self-defense, the State must prove, beyond a reasonable doubt, that the defendant did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986), State v. Starks, 549 So.2d 409 (La.App. 5th Cir.1989). The relevant inquiry on appeal is, whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Garcia, supra; State v. Starks, supra.
LSA-R.S. 14:20 provides in pertinent part:
A homicide is justifiable:
1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ...
The determination of the defendant's culpability by the trier of fact focuses on a two-fold inquiry:
1) From the facts presented, could the defendant reasonably have believed his life to be in imminent danger, and
2) Was deadly force necessary to prevent the danger?
*862 State v. Dill, 461 So.2d 1130 (La.App. 5th Cir.1984), writ denied, 475 So.2d 1106 (La. 1985); State v. Starks, supra.
There is no unqualified duty to retreat in an altercation, however the possibility of escape is a recognized factor in determining whether or not a defendant had the reasonable belief that deadly force was necessary to avoid the danger. State v. Dill, supra.
Manslaughter is a homicide committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self-control and cool reflection. LSA-R.S. 14:31. "Sudden passion" and "heat of blood" are not elements of the offense of manslaughter, rather, they are mitigating factors, in the nature of defense, which exhibit a degree of culpability less than that which is present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986).
In State v. Dill, supra, this court, in discussing the tenuous distinction between a homicide which is justifiable and one which is manslaughter, found that justification was a "perfect" defense which negated criminal culpability, while provocation or "heat of blood" was an "imperfect" defense which only mitigated criminal culpability.
To meet its burden of proof, the State offered the testimony of Tumminello and Ms. Sedillo, who testified as previously stated, along with the testimony of Kelly Sylvestri, Dr. Susan Garcia, Pamela Williams and Detective Rushing.
Kelly Sylvestri testified that on the night of the murder the victim called her and subsequently hung up after stating "I have to go, I gotta go" and that, during the conversation, she could hear someone hammering.
Dr. Susan Garcia, who performed the autopsy on the victim, testified that he received five separate individual wounds, of which three were stab wounds and the others were superficial cuts. The cause of death was a lethal stab wound to the left chest, which perforated the lung and penetrate the heart. The other stab wounds were to the neck and left thigh, while the superficial cuts were to the left side of the cheek and left chest.
Pamela Williams, an expert in the field of biology, examined a knife to test for the presence of blood. An indicator test was positive for the presence of blood. Further analysis, which would have confirmed that it was human blood and the type, was inconclusive.
Detective Rushing of the Jefferson Parish Sheriff's Office testified that, during the investigation, she interviewed Cynthia Sedillo and was advised that she had thrown the knife over a fence. When she searched the area described, she found the knife.
The defense offered the testimony of two neighbors of Tumminello and the defendant (who testified as previously mentioned).
Suzanne Penz, who lived in the adjacent apartment, testified that on the night of the murder she heard arguing. Initially, she heard two male voices, which she identified as Tumminello and the victim. She later heard a female voice saying "Two on one, it's two on one." She stated that the fight took place over a period of about 15 to 20 minutes and that she heard the statement only towards the end of it. Ms. Penz testified that, after she received a subpoena, Tumminello approached her and stated that it was really none of her business, that she didn't know anything or hear anything. She further testified that Tumminello had a very volatile temper and that occasionally, while working on his car, he would become angry and curse. She said that once he "put his fist through the windshield of his car" and another time he "punched in" the window on the driver's side. She also testified to fights he had with a former roommate. Tumminello denied making such statements to Ms. Penz and denied having a volatile temper.
Vernon Keown, who lived above the apartment, testified that on the night of the murder there was a large disturbance downstairs which lasted for two or three minutes. During the disturbance he heard *863 male and female voices, which he could not recognize. However, he did hear a female shout "let him go, let him go." On cross examination, he testified that he recalled telling the officers that the female said "let him go, let him go. I'll take care of him."
In finding that the State had proven, beyond a reasonable doubt, that the offense was not committed in self-defense, the court stated the following:
"This defendant, when he testified, said very clearly that he had a conversation with the deceased, uh, that he was threatened, that he decided to go over to the Tumminello residence, and he decided to arm himself with a knife. He and his girlfriend both armed themselves with knives. Quoting, he said, "uh, I brought a knife just in case", and he brought a knife, just in case there was some type of altercation. And, unfortunately there was an altercation. Not brought on by him, but brought on by the deceased. Uh, given the physical evidence in the case, and all the testimony, I believe that after he was attacked that he did retreat to the bathroom, did come out later, lunge at the deceased and stabbing him some five times and killing him. It was a crime, as I said, committed in passion and therefore it's not murder, It's manslaughter..."
Here, the court found that the testimony of Tumminello was more credible than that of the defendant and his girlfriend. When the testimony is conflicting, the credibility of witnesses is a matter within the sound discretion of the trier of fact. State v. Dill, supra. Such factual determinations will not be disturbed on review unless clearly contrary to the evidence. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Smith, 520 So.2d 1252 (La.App.Cir. 5th Cir.1988) writ denied, 523 So.2d 1320 (La.1988).
Also, under these facts, the defendant's apprehension of receiving great bodily harm was not reasonable nor was the use of deadly force mandated by the situation. The victim had ceased his attack on the defendant, thus allowing the defendant the opportunity to retreat from the conflict. Although the defendant did withdraw to the bathroom, he later emerged from the bathroom, armed with a knife, lunged at the victim and stabbed him several times, thus becoming the aggressor.[5] Viewing the evidence presented in the light most favorable to the prosecution, a rational fact-finder could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. Accordingly, we find that the State met its burden of proof.
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: 1) An error designated in the assignments of error; and 2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impanelling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
A review of the record reveals two errors.
First, the minute entry and hard labor sentencing form order the defendant to be transferred to any facility of the Department of Corrections, other than Angola. The transcript, however, only recommends such a placement. It is well established that, when there is a discrepancy between the minute entry and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732 (La.1983). Thus *864 the minute entry and hard labor sentencing form are hereby amended to reflect that the trial court recommends that the defendant serve his time at a facility other than Angola.
Second, the transcript, unlike the minute entry and hard labor sentencing form, fails to reflect that defendant was given credit for time served prior to sentence; however, such an allowance is mandatory, pursuant to LSA-C.Cr.P. art. 880. State v. Sherman, 532 So.2d 908 (La.App. 5th Cir.1988). Thus, it is hereby ordered that defendant be given credit for time served.
Accordingly, the conviction of defendant is hereby affirmed. His sentence is amended to give the defendant credit for time served. Further, the minute entry and hard labor sentencing form are amended to reflect the recommendation of the trial judge that defendant serve his time at a facility other than Angola.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED, AS AMENDED.
NOTES
[1] Alias Steven Raider.
[2] The State called Cynthia Sedillo as a witness.
[3] Tumminello testified that Kelly Sylvestri called Anthony Sylvestri.
[4] The defendant concedes that Kelly Sylvestri's testimony that Anthony Sylvestri called her and hung up was not hearsay. The defendant additionally states that "arguable, the closing statements... could have been admissible as impulsive and spontaneous words ... of the participants."
[5] A person who is the aggressor cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. LSA-R.S. 14:21.