hWICKER, Judge.
The defendant, Kevin T. Johnson, was convicted by a jury of second degree murder and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant filed motions for new trial and to set aside the verdict, which were denied. Thereafter he appealed.
FACTS
The victim, Kenthen (Kent) Nelson, died after being beaten with a baseball bat by Kevin Johnson on May 5, 1993 at the Club DeVoe, a lounge in Kenner. Johnson gave a recorded statement to Lieutenant Steve Bu-ras, a homicide investigator, after the incident that was played for the jury at trial. Johnson stated that he had gone to the club to order some seafood and saw Nelson standing at the bar. Because his order was not ready, he left and went down the block to his house. As he was leaving, people standing around outside the club told him Nelson had threatened to kill him. Johnson returned about five minutes later, coming in through the side door, and saw Nelson sitting at a table eating seafood. Nelson turned around as he came in and reached in his pants. Johnson saw pool cues lying on the floor of the club and reached down; he “just grabbed” and an aluminum bat was the first *1324 thing he picked up. He picked up the baseball bat because he thought Nelson was going to shoot him. After he saw Nelson going in his pants, he “just started swinging.” He hit Nelson two or three times. After that some people grabbed Johnson and made him leave the club.
Johnson said that he saw a nickel-plated .45 automatic sticking out of Nelson’s pants after Nelson went down on the floor. He admitted Nelson did not take anything out of his pants before he hit him. Later he saw Kent Nelson’s brother, Kermit, walking up the street ^toward his house with a gun which looked like the gun he had seen on Kent Nelson. He stated he and Nelson had had problems in the past: Nelson had hit him with a ear in 1989 and had shot at him from a car a couple of days before the incident at Club DeVoe. The problems arose from a dispute about a girl.
Stephanie Shaw, the club barmaid, testified that Kevin Johnson entered the club at approximately 4:15 p.m. the day of the incident, ordered a drink and then left with it. She saw Kent Nelson come in at approximately 5:45 p.m. that evening. He ordered crawfish and a soft drink and sat alone at a table while he ate, facing the front door with his back to the bar and the side door. Shaw saw Johnson reenter the club through the side entrance, but did not notice whether he was carrying anything. The next thing she knew her sister, who was working behind the bar with her, started to scream. Shaw looked up and saw Johnson was hitting Nelson across the head with a baseball bat, hitting him about five times.
Shaw’s sister, Carol Polk, was the club manager. She had seen Johnson walk in and out of the club a couple of times that day through the front door. Right before the incident she noticed him standing just in front of a large electric fan that blocked the side door. She looked away, then looked up a few minutes later and saw Johnson coming down on Nelson’s head with a bat. She said he struck Nelson about four times. Nelson fell out of his chair and some of the other club patrons ran over to Johnson and took the bat away. Johnson said, “I should have killed him,” then left through the side door.
Both Shaw and Polk testified that the baseball bat did not belong to the club and that neither had ever seen the bat before. Both also stated that Nelson’s hands were on top of the table, in the crawfish he had been eating. They saw no gun on him.
Deputy Stephen Hymel testified he responded to a call regarding an aggravated battery at the Club DeVoe. He learned that shots had been fired down the street from the club, so he went to investigate and encountered Johnson walking toward him. Johnson told him he had beaten up Nelson in self-defense. Hymel read him the Miranda rights and placed him under arrest for aggravated battery.[1] Hymel then asked Johnson if he wanted to explain 13what happened. Johnson told him that he and the victim had been feuding for a couple of days and when he walked to the club for a crawfish boil he was told by a couple of patrons that the victim had gone inside the lounge armed with a revolver, stating he was going to kill Johnson. Johnson told Hymel he went back home and retrieved a baseball bat, went back to the club, approached the victim and hit him with the bat. Hymel asked if the victim pulled or attempted to pull a gun on him, but Johnson told him he didn’t give him an opportunity to do so. Hymel testified that although a baseball bat was found on the scene, no gun was found, nor would any of the bystanders give statements.
Johnson’s statement to Deputy Hymel was consistent with the statement he later gave to Lt. Buras. Buras also testified that no gun was found at the club, nor was he able to verify Johnson’s claim that other people told him Nelson had threatened him.
In addition, Johnson testified in his own defense at trial. He said that when he reentered the club through the side entrance, he and Nelson made eye contact. Nelson’s hand left the table and went toward his waistband and he proceeded to stand. “[Tjhat’s when I just picked up the bat and start [sic] swinging.” (Although Johnson initially told Deputy Hymel he got the bat from *1325 his home, at trial he maintained that he found the bat on the floor of the lounge.) According to Johnson, Nelson was unable to pull his gun, but the defendant claimed that he did see the weapon as the victim lay on the club floor. Johnson stated that Nelson did not speak to him prior to the incident that evening, nor had Nelson threatened him in the past, but he reiterated what he had said in his recorded statement about the two previous confrontations with Nelson.
However, several trial witnesses testified that Nelson’s elbows were resting on the table when Johnson struck him and, in fact, Nelson’s hands were in or near his plate of food at the time. Witnesses also indicated that there appeared to be no indication of hostility between Johnson and Nelson prior to Johnson’s attack on the victim.
Bar patron Patrick Kelly testified that he was playing pool in the club when he heard noises and people screaming. He turned and saw Johnson hit Nelson two or three blows with a bat; then someone grabbed Johnson and pushed him out the door. Kelly never saw a gun |4in the club or on Nelson, although he admitted he could not see Nelson’s body well due to the crowd. He said Nelson’s head and back were turned to Johnson when Johnson was wielding the bat.
Louis Stewart, the owner of the Club De-Voe building and a cousin of the defendant, was in the bar on the date of the incident. He had seen Johnson at the bar earlier and had noticed Nelson sitting at a table. Stewart noticed Johnson come in through the side door with a bat in his hand.[2] They made eye contact briefly and Johnson paused, but Stewart turned back to the bar. Then he heard a scream, swung around, and saw Johnson striking Nelson over the head with the bat. He confirmed that Nelson’s hands were on the table and that while being rushed outside Johnson stated he should have killed Nelson. Stewart never saw any gun. Henry McCaskill, a bar employee who testified as a defense witness, testified he was working at the bar when he heard a noise, looked up, and saw Johnson standing over Nelson drawing back with the baseball bat. He saw Johnson hit Nelson two or three times after that. Then he ran from behind the bar and reached Johnson at the same time as another man. The other man snatched the bat while McCaskill grabbed Johnson and pushed him out the door. McCaskill also confirmed that Nelson’s hands were above the table and that he had seen no hostility between Nelson and Johnson prior to the attack. However, McCaskill did state that he noticed a gun-butt sticking out of Nelson’s waistband when Nelson fell on the floor, but that the gun was gone when he came back in after evicting Johnson.
Alvin Jackson, who was playing pool at the club when the incident happened, also testified on behalf of the defendant. Although Jackson initially told the police that he could not fully see the incident, at trial he testified that he saw Nelson raise his shirt as if to display a gun to the defendant. He said that Nelson’s hands were originally at pocket-level, and that Nelson attempted to reach for his waistband while being struck by Johnson. Jackson did not see a gun, however, until Nelson fell to the ground; he said that someone in the club removed the gun and handed it to Nelson’s brother, who later fired the weapon near Johnson’s home.
IsForensic pathologist Fraser McKenzie classified the death as a homicide caused by trauma to the head and injury to the brain. The pathologist discovered no defensive wounds on Nelson.
ASSIGNMENT OF ERROR NO. 1
Defendant asserts that the trial court erred in repeatedly excluding evidence tending to establish his defense that the attack on the victim was committed in self-defense. The defendant argues that the trial court improperly excluded evidence of the victim’s prior threats against him and of the defendant’s own state of mind as to the victim’s dangerous character. In support of his argument the defendant contends that at the time of the incident, the victim indicated his inten- *1326 tion to harm him and, thus, the defendant’s actions were in self-defense.
La.Code Evid. art. 404(B)(2) provides, in pertinent part,
“In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim’s prior threats against the' accused or the accused’s state of mind as to the victim’s dangerous character is not admissible
sfc * * »
Comment (n) following Article 404 states, “The provision in Paragraph B relative to hostile demonstration or overt act on the part of the victim was added by Senate Committee amendment in order generally to continue prior Louisiana law in this regard. See former R.S. 15:482.” La.R.S. 15:482 (repealed by the enactment of the Code of Evidence) provided, “In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against the accused is not admissible.”
The Louisiana Supreme Court set forth the following standard interpreting La.R.S. 15:482:
“[T]he defendant must present appreciable evidence of an overt act or hostile demonstration by the victim before evidence of dangerous character can be admitted. ‘Overt act’ in this context means any act of the victim which manifests in the mind of a reasonable person a present intention on his part to Mil or do great bodily harm. * * * Moreover,’ this overt act by the decedent must have been made against the defendant at the time of the incident. * * ⅜ [Citations omitted.]”
State v. Cavalier, 421 So.2d 892, 894 (La. 1982). See also, State v. Ducre, 596 So.2d 1372, 1378 (La.App. 1st Cir.), writ denied 600 So.2d 637 (La.1992).
The defendant characterizes the following as “appreciable evidence of an overt hostile act” by the victim: “[The defendant] saw the victim go for his waistband, two witnesses confirmed that the butt of a pistol protruded from [the victim’s] waistband, and the victim’s brother was immediately thereafter seen to fire [sic] an identical pistol.”
The defendant’s claim, however, is not established by the testimony presented at trial. Five witnesses testified that the victim’s hands were above the table at all times prior to the defendant’s attack on the victim. Although the defendant stated that the victim’s hand left the table and went toward his waistband, he admitted that he did not see a gun until the victim lay on the floor of the lounge.
Four witnesses saw no gun in the victim’s possession; homicide investigators recovered no gun from the scene. Two defense witnesses claimed they noticed the butt of a gun protruding from the victim’s waistband after he fell to the floor. Only Alvin Jackson, who initially denied seeing the incident, claimed to have seen the victim raise his shirt as if he were displaying a gun to the defendant. Jackson’s testimony, however — including his claim that the victim attempted to pull his gun while being struck — was not substantiated by any other witness at trial. The defendant did not, therefore, present appreciable evidence of an overt act or hostile demonstration by the victim. Cavalier, supra.
Since there was no appreciable evidence of an overt act on the part of the victim at the time of the incident, the trial court properly excluded evidence of the victim’s prior threats against the defendant and of the defendant’s state of mind as to the victim’s dangerous character. La.Code Evid. art. 404(B)(2).
ASSIGNMENT OF ERROR NO. 2
Defendant asserts that the trial court erred in denying his motion for a new trial. By this assignment the defendant reurges his claim that the evidence was insufficient to prove beyond a reasonable doubt that this homicide was not committed in self-defense.
|7A defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue; instead, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Garcia, 488 So.2d 953, 956 (La.1986); State v. Necaise, 466 So.2d 660, 669 (La.App. 5th Cir.1985). *1327 Further, the relevant inquiry on appeal is whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Williams, 483 So.2d 999, 1003 (La.1986).
La.R.S. 14:20(1) provides that a homicide is justifiable “[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.” This Court has held that the adjudication of a defendant’s claim of justifiable homicide by the trier of fact focuses on a two-part inquiry: (1) Whether, from the facts presented, the defendant could reasonably have believed his life to be in imminent danger, and (2) whether deadly force was necessary to prevent the danger. State v. Dill, 461 So.2d 1130, 1137 (La.App. 5th Cir.1984), writ denied, 475 So.2d 1106 (La.1985).
The overwhelming evidence presented at trial reveals that the defendant, without provocation, brutally attacked and killed the victim. The forensic pathologist found no evidence of defensive wounds on the victim, nor was there testimony which established any hostility between the victim and the defendant prior to trial. Furthermore, five witnesses (including one defense witness) maintained that the victim’s hands remained above the table at the time of the beating. Although the defendant claimed to have seen a gun in the victim’s waistband after the victim fell to the floor, homicide investigators did not recover a gun. In addition, the alleged threats by the victim conveyed to the defendant through persons outside the club were not corroborated by any witnesses at trial.
Clearly, the trier of fact found the testimony of the State’s witnesses more credible than the testimony of the defendant or of the witnesses testifying on his behalf. The jury’s verdict makes it obvious they chose to credit the testimony presented by the State’s witnesses. |glt is well-established that the credibility of witnesses is a matter within the sound discretion of the trier of fact and such determinations will not be disturbed on review unless contrary to the evidence. State v. Richardson, 425 So.2d 1228, 1232 (La. 1983); State v. Klar, 400 So.2d 610, 613 (La.1981); State v. Butler, 450 So.2d 764, 766 (La.App. 5th Cir.1984).
Based on the evidence presented at trial, the defendant could not reasonably have concluded that his life was in imminent danger. Viewing the evidence in the light most favorable to the prosecution, the jury could have found beyond a reasonable doubt that the defendant did not act in self-defense and, thus, the trial court did not err in denying defendant’s motion for a new trial. Garcia, supra.
ASSIGNMENT OF ERROR NO. 3
Defendant asserts any and all errors patent on the face of the record.
An error patent review conducted in accordance with State v. Williams, 593 So.2d 753, 758 (La.App. 5th Cir.1992), and La.Code Crim.P. art. 920 reveals that the trial court erred in imposing sentence, because it failed to give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. La.Code Crim.P. art. 880. Although the hard labor sentencing form does provide for credit for time served, the transcript prevails where there is a discrepancy between it and the minute entry. State v. Lynch, 441 So.2d 732, 734 (La.1983). The defendant’s sentence, therefore, is amended to afford him credit for time served.
For the foregoing reasons, the defendant’s conviction is affirmed. His sentence is amended to give credit toward service of the sentence for the time defendant spent in actual custody prior to imposition of the sentence. As amended, the sentence is affirmed.
CONVICTION AFFIRMED AND SENTENCE, AS AMENDED, AFFIRMED.

. The charge was changed to second degree murder after Nelson expired several hours later.

. Stewart admitted that when interviewed by the police he had denied seeing a bat in Johnson’s hand, but he stated at trial that he had said that to avoid becoming involved and said his story at trial was the truth.